IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 3:13-CV-01109-JBT

LAREESA BERMAN,

    Plaintiff(s),

v.                                                **DISPOSITIVE MOTION**

THOMAS A. KAFKA,

    Defendant.
_____/

## DEFENDANT, THOMAS A. KAFKA'S MOTION FOR FINAL SMMARY JUDGMENT AND MEMORANDUM OF LAW

COMES NOW the Defendant, THOMAS A. KAFKA, by and through his undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and hereby serves his Motion for Final Summary Judgment and in support states as follows

### I. Undisputed Facts

1. Plaintiff has filed a single count "libel per se" Amended Complaint against Defendant. (Doc. 26).

2. Defendant is the owner of a company named Maitland Trifecta that was known as Maitland Furniture, Inc. prior to 2009. **Deposition of Thomas Kafka at pgs. 9-10.** Plaintiff's husband, Christopher Berman, was an employee of Maitland Furniture, Inc. until January 2009. **Deposition of Thomas Kafka at pgs. 27-28.**

3. Thereafter, Mr. Berman applied for unemployment benefits through the Department of Economic Opportunity - Agency for Workforce Innovation (hereinafter

1

"Agency") in January 2009 and became eligible to receive benefits on February 18, 2009. **Exhibit A and Deposition of James Bellflower at pg. 16.**

4. The Agency administers the unemployment compensation reemployment assistance program. **Deposition of James Bellflower at pg. 8 and Deposition of Janice Connell at pg. 11.** The Agency is an administrative in nature. **Deposition of James Bellflower at pg. 8 and Deposition of Janice Connell at pg. 7.** As an administrative agency the decisions that are made affect the rights of individuals as part of the quasi judicial process.. **Deposition of James Bellflower at pg. 9 and Deposition of Janice Connell at pg. 7 and 8.**

5. Defendant, as the owner of Maitland Furniture, Inc. appealed the determination awarding unemployment compensation benefits to Mr. Berman. Thereafter, on May 29, 2009, a decision of the Appeals Referee was issued, following the hearing regarding Defendant's appeal, that disqualified Mr. Berman from receiving unemployment benefits.. **See Exhibit B and Deposition of James Bellflower at pg. 17.** During that hearing, Defendant presented evidence to the Appeals Referee of what Defendant considered evidence of embezzlement by not only Mr. Berman but also by Plaintiff in the form of two business checks whose name and signature appeared on the back of each. **Composite Exhibit C.** The quasi judicial process regarding Mr. Berman's claim for unemployment benefits was continuing. **Deposition of James Bellflower at pg. 17-18.**

6. On October 21, 2009, an order was issued by the Unemployment Appeals Commission vacating the decision issued by the appeals referee on May 29, 2009, that disqualified Mr. Berman from receiving unemployment compensation benefits and remanded for further proceedings. **Exhibit D.** The Appeals Commission oversees the Office of Appeals.

**Deposition of James Bellflower at pg. 19.** The quasi judicial process regarding Mr. Berman's claim for unemployment benefits was continuing. **Deposition of James Bellflower at pg. 19.**

7. The unemployment compensation appeals process continued and on August 20, 2010, an order was issued stating that the prior decision of the Appeals Referee dated March 9, 2010, was reinstated. The appeal to the determination dated February 18, 2009, was dismissed without prejudice until September 9, 2010. **Exhibit E.**

8. On October 25, 2010, a Notice of Determination was issued regarding Mr. Berman missing two or more consecutive reporting periods. **Exhibit F.** One of the requirements to receiving unemployment benefits was reporting to the Agency efforts made to find employment. Such a Notice is a form of decision making as part of the quasi judicial process. The quasi judicial process regarding Mr. Berman's claim for unemployment benefits was continuing. **Deposition of James Bellflower at pg. 17-23.**

9. On December 28, 2010, over two months after the Notice of Determination was issued, Mr. Berman wrote a letter to the Agency for Workforce Innovation wishing to appeal the Determination regarding missing reporting periods. **Exhibit G.**

10. On February 11, 2011, a Decision of Appeals Referee was issued determining that Mr. Berman was ineligible for the receipt of benefits from February 8, 2009, through October 2, 2010. **Exhibit H.** .

11. On August 10, 2011, Defendant sent an electronic mail to James Bellflower with the Agency requesting to appeal the ruling awarding Mr. Berman unemployment benefits after finding out he had been receiving benefits from his Quarterly Notice of Benefits Paid statement.. **Composite Exhibit I.** Mr. Bellflower has been employed by the Agency for over five years and has been employed in the unemployment compensation program where he assisted with claims,

3

adjudicating claims and redeterminations. **Deposition James Bellflower at pgs. 6-7.** He has also been responsible for final orders of the Agency as well as drafting and filing legal correspondence. **Deposition of James Bellflower at pgs. 7-8.** Mr. Bellflower was familiar with all of the Agency documents referenced in his deposition as well as how they were produced and the role they play in the unemployment compensation process. **Deposition of James Bellflower at pgs. 65-66.** On August 12, 2011, Mr. Bellflower responded to Defendant stating that he directed Defendant's request to appeal to the Office of Appeals and a Deputy Clerk was to contact him. **Composite Exhibit I.** On August 16, 2011, Defendant sent an electronic mail to Mr. Bellflower thanking him for his assistance. Defendant also explained his reasoning for wanting to appeal the award of benefits to Mr. Berman. Within this e-mail is the first alleged libel per se statement, "I asked Connie not to lose sight of the fact that you initially ruled in our favor and that we proved that Chris Berman and his wife embezzled money from our company." **Composite Exhibit I.** Connie was a deputy clerk with the Agency for Workforce Innovation office of Appeals in Jacksonville. The request by Defendant to appeal any ruling that was made regarding benefits that may have been awarded to Mr. Berman was a continuation of the quasi judicial process. **Deposition of James Bellflower at pg. 28.** As a result, on September 1, 2011, a Notice of Docketing was issued regarding Defendant's request to appeal. **Exhibit J.**

12. On September 16, 2011, an order was issued by the Unemployment Appeals Commission as a result of and in response to the electronic mails sent by Defendant to Mr. Bellflower as part of **Composite Exhibit I** addressing Defendant's Request. **Exhibit K and Deposition of James Bellflower at pg. 35.** The Order stated that Defendant's appeal was forwarded to the Office of Appeals by the Appeals Commission for a hearing before the appeals referee. **Exhibit K.** The Notice of Order actually stated that Defendant had the right to appeal

the September 16, 2011, Order issued by the Unemployment Appeals Commission to the District Court of Appeal if he so chose. **Exhibit L.**

13. On or about August 16, 2011, Mr. Bellflower also forwarded Defendant's concerns to the Benefit Payment Control Unit for an investigation into whether Mr. Berman was working while receiving unemployment benefits. This was ultimately received by Janice Connell in that unit who conducted fraud investigations. **Exhibit M and Deposition of Janice Connell at pg. 6.** Ms. Connell has been employed by the Agency for forty years. **Deposition of Janice Connell at pg. 7.** During that time she has worked in various departments including initial claims, adjudication, employer protest, benefit timeliness and the benefit payment control section. **Deposition of Janice Connell at pg. 6.** Ms. Connell can conduct a fraud investigation, as part of her position in the benefits payment control section, at any point during the time a person is receiving unemployment benefits. **Deposition of Janice Connell at pg. 9.** As a result, Notices of Determination are issued and a person's rights are affected. **Deposition of Janice Connell at pg. 8 and 10.** If a person's benefits are terminated as a result of her findings, that person is entitled to appeal. Ultimately, Ms. Connell's investigations play a role in the quasi judicial process of whether unemployment benefits are revoked or not. **Deposition of Janice Connell at pg. 9.**

14. Here, the Defendant sent Ms. Connell a package of documents for the investigation into the allegations that Mr. Berman was working while receiving benefits and one of the documents contained the second alleged libel per se statement (attached to Plaintiff's Amended Complaint as Exhibit D). **Exhibit N.** In this document it states, "part of the money was embezzled by his wife." Other than the two written statements received by Mr. Bellflower

and Ms. Connell of the Agency as noted above, there are no other statements subject of Plaintiff's lawsuit. **Deposition of Lareesa Berman at pg. 97**.

15. Ms. Connell used the documents received from the Defendant as part of her investigation into whether Mr. Berman was employed while receiving unemployment benefits. **Deposition of Janice Connell at pg. 14**. The documents sent to Ms. Connell are confidential and remain so today. **Deposition of Janice Connell at pg. 14**.

16. Between September 22, 2011, and October 13, 2011, Ms. Connell conducted and completed her investigation. **Deposition of Janice Connell at pg. 16**. As a result of her investigation a Notice of Determination was issued on October 17, 2011, finding that Mr. Berman was not employed while receiving unemployment benefits. **Exhibit O**. Regardless, of the finding, Ms. Connell's findings and the issuance of the Notice of Determination were a continuation of the quasi judicial process. **Deposition of Janice Connell at pg. 18**. In fact, the Defendant could have even appealed the Determination if he chose to. **Deposition of Janice Connell at pg. 18**. Ms. Connell testified that even through the time of her deposition in April 2014, the Defendant could have appealed the decision. **Deposition of Janice Connell at pg. 18**.

17. As a result, it is clear that the two statements subject of Plaintiff's claim of libel per se were made during the course of a quasi judicial proceeding and as such are not actionable as they are absolutely privileged pursuant to Florida's litigation privilege.

## II. MEMORANDUM OF LAW

### A. Standard

Summary Judgment is appropriate where the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Federal Rule of Procedure 56(a). A movant carries its burden by showing that there is an

absence of evidence supporting the non-movant's case. Denney vs. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant who must present affirmative evidence to show a genuine issue for trial. Porter vs. Ray, 461 F.3d 1315 (11th Cir. 2006).

A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson vs. Liberty Lobby, Inc., 477 U.S. 242 (1986). Which facts are material depends on the substantive law. Id. A court need not permit a case to go to a jury when the inferences drawn from the evidence, and upon which the non-movant relies, are implausible. Mize vs. Jefferson City Bd. Of Educ., 93 F.3d 739 (11th Cir. 1996).

B. **Statements by Defendant are Absolutely Privileged Pursuant to Florida's Litigation Privilege and are Therefore not Actionable**

Plaintiff's Amended Complaint contains a single count for libel per se against Defendant. There are two allegedly libelous statements subject of this action. Although Plaintiff's Amended Complaint alleges that the statements were distributed widely, there is no evidence to support same. (Doc. 26 at 5, 7) and **Deposition of Lareesa Berman at pg. 97**. The statements at issue are as follows:

1) An August 16, 2011, e-mail from Defendant to James Bellflower of the Agency as part of a string of e-mails to Mr. Bellflower wishing to appeal a prior decision awarding Mr. Berman unemployment benefits. **Composite Exhibit I**. The e-mail states in pertinent part::

> I asked Connie not to lose sight for the facts that you initially
> Ruled in our favor and that **we proved that Chris Berman
> and his wife embezzled money from our company.** ...

7

2) Defendant sent a package to Janice Connell in the Benefit Payment Control Unit of the Agency, which included the page containing the second allegedly libelous statement, to conduct an investigation to determine whether Mr. Berman was working while receiving unemployment benefits. **Exhibit M and Deposition of Janice Connell at pg. 14.** Additionally, this statement is attached as Exhibit D to the Amended Complaint as follows:

> We paid Chris Berman $52,000.00 in 2008 and another $2,000.00 for
> the first two weeks of 2009. He was terminated for embezzling money.
> **(Part of the money was embezzled by his wife)**.....

These statements were made during the course of and related to a quasi judicial proceeding and as such are absolutely privileged pursuant to Florida's litigation privilege barring Plaintiff's claim of libel per se against Defendant.

Florida recognizes an absolute privilege for statements made during the course of judicial and quasi judicial proceedings. Specifically, Florida law provides for immunity from all tort claims based on an act occurring during the course of a judicial proceeding so long as the act has some relation to the proceeding. Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. vs U.S. Fire, 639 So.2d 606, 608 (Fla. 1994). The purpose of the litigation privilege is to balance two competing interests, the right to enjoy a reputation unimpaired by defamation, and the right to full disclosure of facts during a judicial proceeding. Id. at pg. 608. The litigation privilege extends to all acts during litigation, "so long as the act has some relation to the proceeding." Id.

In Echevarria, McCalla, Raymer, Barrett & Frappier vs. Cole, 950 So.2d 380 (Fla. 2007), the court again examined the litigation privilege and confirmed that the policy reasons for adopting a rule of immunity for actions taken in the course of judicial proceedings is the

necessity for candid and unrestrained communications in those proceedings, free of the threat of legal actions predicated upon those communications in the defense or prosecution of an action.

As noted above, Florida's litigation privilege applies equally to statements made during the course of a quasi judicial proceeding such as we have in this case, i.e. the two statements sent to the Agency as part of the unemployment compensation proceedings regarding the benefits applied for by Mr. Berman. Statements made during the course of a quasi judicial proceeding are absolutely privileged. Gandy vs. Trans World Computer Tech. Grp., 787 So.2d 116, 119 (Fla. 2nd DCA 2001). In Gandy, allegedly false and defamatory affidavits submitted in response to the Equal Employment Opportunity Commission's investigation of an age discrimination claim were found to be absolutely privileged. Id. In Suarez vs. School Bd. Of Hillsborough County, Fla, 2014 WL 6536 M.D. Fla. 2014), statements made by the School Board during an Equal Employment Opportunity ("EEOC") investigation were absolutely privileged as the EEOC was a quasi judicial entity.

Proceedings regarding unemployment compensation are also quasi judicial. Pearl vs. Omni Intern of Miami, Ltd, 439 So.2d 316. Here, Mr. Berman applied for unemployment benefits through the Agency after being let go by Defendant's company, Maitland Furniture, Inc., in January 2009 and became eligible to receive benefits on February 18, 2009. **Exhibit A and Deposition of James Bellflower at pg. 16.** Mr. Berman was a salaried employee of Maitland Furniture from 2006-2009 selling products as the Vice President of Sales for Trifecta Gaming USA, Inc. Any monies brought in through such sales went towards paying expenses for both companies. **Deposition of Thomas Kafka at pgs. 27-28**. The Agency administers the unemployment compensation reemployment assistance program. **Deposition of James Bellflower at pg. 8 and Deposition of Janice Connell at pg. 11.** The Agency is administrative.

**Deposition of James Bellflower at pg. 8 and Deposition of Janice Connell at pg. 7.** As an administrative agency the decisions that are made affect the rights of individuals as part of the quasi judicial process. **Deposition of James Bellflower at pg. 9 and Deposition of Janice Connell at pg. 7 and 8.**

The record in this case reveals that the unemployment compensation quasi judicial proceedings were ongoing over an extended period of time and in fact continuing at the time of the alleged libel per se statements. Notably and importantly, a claim for unemployment compensation benefits remains active and not closed until either the benefits are exhausted and/or the benefits are no longer payable. **Deposition James Bellflower at pg. 13 and 39.** This is due to a variety of reasons all of which result in the quasi judicial process continuing. For example, during the time someone is receiving unemployment benefits, an appeal can be taken a various times which result in orders being issued. **Deposition of James Bellflower at pgs. 13-14.** Also, while someone is receiving unemployment benefits, investigations can be conducted to determine if that person is employed while receiving benefits and as a result, Notices and Determinations are issued, all of which affect that persons rights as part of the quasi judicial process.. **Deposition of James Bellflower at pgs. 13-14.**

The history of proceedings regarding the unemployment proceedings for Mr. Berman's claim is important to establish the continuing nature of the quasi judicial proceedings through the date of the allegedly libel per se statements. Specifically, on May 29, 2009, a decision of Appeals Referee was issued following a hearing regarding Defendant's appeal which disqualified Mr. Berman from receiving unemployment benefits. **See Exhibit B and Deposition of James Bellflower at pg. 17.** During that hearing, Defendant presented evidence to the Appeals Referee of what Defendant considered evidence of embezzlement by not only Mr.

10

Berman but also by Plaintiff in the form of two business checks which contain the name and signature of both on the back of each check. **Exhibit C**.

On October 21, 2009, an order was issued by the Unemployment Appeals Commission vacating the decision issued by the appeals referee on May 29, 2009, that disqualified Mr. Berman from receiving unemployment compensation benefits, and remanding for further proceedings. **See Exhibit D.** Thereafter, the quasi judicial process continued and on August 20, 2010, an order was issued stating that the decision of the Appeals Referee from a prior order dated March 9, 2010, was reinstated. The appeal to the determination dated February 18, 2009, was dismissed without prejudice until September 9, 2010. **See Exhibit E.**

On October 25, 2010, a Notice of Determination was issued regarding Mr. Berman missing two or more consecutive reporting periods. **Exhibit F.** One of the requirements to receiving unemployment was reporting to the Agency of efforts to find employment. Such a Notice is a form of decision making as part of the quasi judicial process. **Deposition of James Bellflower at pg. 22.** Thereafter, on December 28, 2010, over two months after the Notice of Determination was issued, Mr. Berman wrote a letter to the Agency for Workforce Innovation wishing to appeal the Determination regarding missing reporting periods. **Exhibit G.** However, on February 11, 2011, a Decision of Appeals Referee was issued which determined that Mr. Berman was ineligible for the receipt of benefits from February 8, 2009, through October 2, 2010. **Exhibit H.** As of this date, the quasi judicial process continued as to Mr. Berman's claim for unemployment benefits as Notices were issued, an appeal was taken, and an Order was issued, all of which, are part of the quasi judicial process of unemployment benefits. **Deposition of James Bellflower at pg. 14.**

On August 10, 2011, Defendant, unaware until that time after receiving his Quarterly Notice of Benefits Paid statement that Mr. Berman was receiving unemployment benefits, sent an electronic mail to James Bellflower, an employee of the Agency, requesting to appeal the ruling awarding Mr. Berman unemployment benefits. **Composite Exhibit I.** On August 12, 2011, Mr. Bellflower responded to Defendant stating that he directed Defendant's request to appeal to the Office of Appeals and a Deputy Clerk was to contact him. **Composite Exhibit I.** On August 16, 2011, Defendant sent an electronic mail to Mr. Bellflower thanking him for his assistance. Defendant also explained his reasoning for wanting to appeal the award of benefits to Mr. Berman. Within this e-mail is the first alleged libel per se statement, "I asked Connie not to lose sight of the fact that you initially ruled in our favor and that we proved that Chris Berman and his wife embezzled money from our company." **Composite Exhibit I.** Connie was a deputy clerk with the Agency for Workforce Innovation office of Appeals in Jacksonville. **Deposition of James Bellflower at pg. 31.** The request by Defendant to appeal any ruling that was made regarding benefits that may have been awarded to Mr. Berman was a continuation of the quasi judicial process. **Exhibit C, Deposition of James Bellflower at pg. 28.**

As furtherance of that fact and in support of Defendant advancing a defense against the claim for unemployment benefits, on September 1, 2011, a Notice of Docketing was issued by the Unemployment Appeals commission as a result of Defendant's request to appeal. **Exhibit J.** Furthermore, on September 16, 2011, an order was issued by the Unemployment Appeals Commission as a result of and in response to the electronic mails sent by Defendant to Mr. Bellflower's part of **Composite Exhibit I** addressing Defendant's Request. **Exhibit K and Deposition of James Bellflower at pg. 35.** The Order stated that Defendant's appeal was forwarded to the Office of Appeals by the Appeals Commission for a hearing before the appeals

referee. **Exhibit K.** It should be noted that the Appeals Commission oversees the Office of Appeals. **Deposition of James Bellflower at pg. 19**. As such, any ruling on Defendant's request to appeal would need to be made by the Office of Appeals first which is why the Appeals Commission forwarded Defendant's request to them. The Notice of Order actually stated that Defendant had the right to appeal the September 16, 2011, Order issued by the Unemployment Appeals Commission to the District Court of Appeal if he so chose. **Exhibit L.** Defendant was exercising his right to appeal a prior order which was issued without prejudice as part of the quasi judicial process. This matter is distinguishable from Clough Marketing Services, Inc. vs. Main Line Corp., 2007 WL 1430404 (N.D. Ga. 2007), where statements were made after the matter had settled and were not made in the prosecution or defense of a claim but merely to comply with certain conditions of settlement. Here, Defendant's request to appeal, which included the alleged libel per se statement sent to Mr. Bellflower, was made as part of his defense against Mr. Berman receiving benefits and triggered an Order to issue not only from the Appeals commission but also a referral to the Office of Appeals. As noted above, an unemployment claim remains active until the benefits are exhausted or are no longer payable. The timing of the request to appeal is irrelevant as it was formally responded to by the Agency. Additionally, whether Defendant chose to ultimately follow through with the appeal is of no consequence.

In Foster vs. Select Medical Corporation, 2013 WL 764780 (M.D. Fla. 2013), the court found that statements made to federal and state agencies, including the State of Florida unemployment claims program, regarding the circumstances surrounding plaintiff's termination were absolutely privileged. The court cited to Gandy, 787 So.2d 116, "[D]efamatory words published during the course and scope of a judicial or quasi judicial proceeding are absolutely

13

privileged if they are connected with, or relevant or material to the cause at hand or subject of inquiry." Defendant's statements to Mr. Bellflower as an agent of the Agency (who was not an employee of the Appeals Commission at the time contrary to Plaintiff's expected argument. **Deposition of James Bellflower at pg. 54)** were clearly relevant and material to Mr. Berman's claim for unemployment benefits as he was seeking to appeal a decision awarding him those benefits. As for mentioning Plaintiff in those statements, as Defendant has testified, if Plaintiff's name had not appeared on the back of company checks, he would not have had any reason to bring her name up but it did. **Deposition of Thomas Kafka at pgs. 100 and 103.** This should not be of any matter here though as the entirety of the statement to Mr. Bellflower is afforded an absolute privilege.

As for the second allegedly libel per se statement, on or about August 16, 2011, Mr. Bellflower also forwarded Defendant's concerns to the Benefit Payment Control Unit for an investigation into whether Mr. Berman was working while receiving unemployment benefits. This was ultimately received by Janice Connell in that unit who conducted fraud investigations. **Composite Exhibit M and Deposition of Janice Connell at pg. 6.** Ms. Connell can conduct a fraud investigation at any point during the time a person is receiving unemployment benefits. **Deposition of Janice Connell at pg. 9.** As a result of her investigations, Notices of Determination are issued and a person's rights are affected. **Deposition of Janice Connell at pg. 8 and 10.** If a person's benefits are terminated as a result of her findings, that person is entitled to appeal. Ultimately, Ms. Connell's investigations play a role in the quasi judicial process of whether unemployment benefits are revoked or not. **Deposition of Janice Connell at pg. 9.**

14

Here, the Defendant sent Ms. Connell a package of documents for the investigation into the allegations that Mr. Berman was working while receiving benefits and one of the documents contained the second alleged libel per se statement (attached to Plaintiff's Amended Complaint as Exhibit D). **Exhibit N.** In this document it states, "part of the money was embezzled by his wife." Ms. Connell used the document received from the Defendant as part of her investigation into whether Mr. Berman was employed while receiving unemployment benefits. **Deposition of Janice Connell at pg. 14.** The documents sent to Ms. Connell are confidential and remain so today. **Deposition of Janice Connell at pg. 14.**

Between September 22, 2011, and October 13, 2011, Ms. Connell conducted and completed her investigation. **Deposition of Janice Connell at pg. 16.** As a result of her investigation a Notice of Determination was issued on October 17, 2011, finding that Mr. Berman was not employed while receiving unemployment benefits. **Exhibit O.** Regardless, of the finding, Ms. Connell's findings and the issuance of the Notice of Determination were a continuation of the quasi judicial process. **Deposition of Janice Connell at pg. 18.** In fact, the Defendant could have even appealed the Determination if he chose to. **Deposition of Janice Connell at pg. 18.**

As stated in Foster, "absolute immunity applies in many "professional, licensing, and administrative proceedings," such as worker's compensation, unemployment compensation, labor grievances, and EEOC investigations." citing: Feldman vs. Glucroft, 522 So.2d 798, 801 (Fla. 1988). In Foster, the plaintiff complained of statements made during an unemployment claim investigation. Id. at pg. 8. Here, Defendant's letter as part of the package sent to Ms. Connell was for her unemployment fraud investigation, an integral part of the unemployment compensation proceedings, and as such should be afforded an absolute privilege pursuant to

Florida's litigation privilege. As is evidenced by the issuance of the Notice of Determination on October 17, 2011, the quasi judicial proceedings continued as the unemployment claims proceedings continued and the rights of individuals could have been affected had Ms. Connell found fraud.

### C. Conclusion

Both alleged libel per se statements were made as part of the quasi judicial process for unemployment benefits. The first statement in the e-mail to Mr. Bellflower on August 16, 2011, was to appeal a prior ruling. Contrary to Plaintiff's unsupported allegations in her Amended Complaint, at no time were the proceedings closed. This is evidenced not only by the testimony of Mr. Bellflower but also by the issuance of the Notice of Docketing sent to Mr. Berman and the Order by the Unemployment Appeals Commission on September 16, 2011, in response to Defendant's request to appeal. Clearly, the statement contained in the electronic mails to Mr. Bellflower of the Agency regarding Plaintiff embezzling money should be afforded absolute privilege pursuant to Florida's litigation privilege.

As for the second statement contained in the document sent to Ms. Connell, it also should be afforded an absolute privilege pursuant to Florida's litigation privilege. Ms. Connell conducts fraud investigations to determine whether a recipient of unemployment benefits has been working while receiving those same benefits. Defendant supplied Ms. Connell documents, including the document stating, "part of the money was embezzled by his wife," as part of her investigation. Ms. Connell's investigations are part of the quasi judicial process as her findings affect the rights of persons receiving unemployment benefits. As such, Defendant's statement to her must be absolutely privileged.

WHEREFORE, Defendant, THOMAS A. KAFKA respectfully requests this Honorable Court enter an Order Granting his Motion for Final Summary Judgment.

**CERTIFICATE OF SERVICE**

We hereby certify that on July 25, 2014, a true and correct copy of the foregoing was sent via First Class Mail to the following: Laressa Berman, 303 Augusta Circle, St. Augustine, Florida 32086.

/s/ Todd T. Springer
Todd T. Springer, Esq.
Fla. Bar No. 178410
tspringer@ls-law.com
Luks, Santaniello, Petrillo & Jones
301 W. Bay Street, Suite 1050
Jacksonville, Florida 32202
Telephone: (904) 791-9191
Facsimile: (904) 791-9196
Luksjax-pleadings@ls-law.com

Paul S. Jones, Esq.
Fla. Bar No. 149550
psj@ls-law.com
Luks, Santaniello, Petrillo & Jones
255 South Orange Avenue, Suite 750
Orlando, Florida 32801
Telephone: (407) 540-9170

TRV-17995J/324