FILED

**United States District Court**
**Middle District of Florida**
**Jacksonville Division**

2014 AUG -1   AM 10: 44

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

Lareesa Berman – *pro se*

       Plaintiff

v.                                                     Case No.3:13-cv-01109-J-JBT

Thomas A. Kafka,

       Defendant

_____/

### PLAINTIFF'S CROSS-MOTION FOR FINAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW

COME NOW Plaintiff LAREESA BERMAN pro se and in accordance with RULE 56 of the Fed. Rules of Civil Procedure and Local Rule 1.510 moves this Court to grant final Summary Judgment, as there is no genuine dispute of a material fact in this case and Plaintiff is entitled to judgment as a matter of law. In support of this Motion, Plaintiff has submitted a Statement of Material Facts, a Memorandum of Law, a Brief, and Exhibits. Plaintiff request oral hearing on this Motion, as it is a Cross-Motion for Summary Judgment and as the Plaintiff is not a trained attorney and believes her ability to explain certain facts of the case would be better served if she can address the Court in person. Plaintiff reserves consideration of fees, costs, expenses, and any other issue or relief for further hearing or trial. Based on the submissions, Plaintiff respectfully requests that this Court grant this Motion for Summary Judgment in full or in part and award her the following relief: The sum of 4.5 million dollars for general damages and punitive damages, exclusive of costs. Enter judgment in favor of Plaintiff, Instruct Defendant to compose and produce a signed letter of apology to Plaintiff and a letter of retraction of the libel per se, to be published and distributed to all recipients to which Defendant has

1

communicated the false and libelous statements that Plaintiff has committed a criminal offense.

## INTRODUCTION

This dispute arose out of Defendant's—Thomas Kafka's—authorship of libel per se against Plaintiff in Defendant's attempt to reopen an unemployment decision that was found to be in favor of Plaintiff's husband. Plaintiff, Lareesa Berman, was and is a nonparty to an unemployment appeal <u>initiated</u> by Thomas Kafka (**Ex. A 2nd req. for adm. Q.2**) to the unemployment proceedings among her husband, Thomas Kafka, and Maitland Furniture, Inc. Lareesa Berman (Plaintiff– pro se) is the wife of Chris Berman—a business partner of Thomas Kafka at one time, an owner/shareholder of Trifecta Gaming USA, Inc., and a former employee of Maitland Furniture, Inc., a different company owned by Defendant Thomas Kafka. Her cause of action is libel per se. Defendant Kafka has stated as a "fact" that he "proved" Plaintiff has committed a criminal offense (embezzlement) when no such act had ever occurred and no such proof exists. This case is about the libeling of a nonparty, it is not about Plaintiff's husband, his unemployment hearing, or his entitlement to unemployment compensation, as clearly he was, since he was awarded his benefits. This case is about me and the unconscionable way Defendant Kafka libeled me, based on assumptions that he claimed as facts.

### The Plaintiff is entitled to Summary Judgment on the claim of libel per se

1. Defendant negligently libeled Plaintiff, without proof of her having committed a criminal offense (embezzlement) and did so with malice (libel per se).

2. Plaintiff Berman has satisfied the burden of proof of an undisputed material fact that the libelous statements were authored by Defendant Thomas Kafka, to which he admits.

3. The e-mails, hard copies, and other verbal correspondence contain statements by Defendant, made as statements of fact not opinion, that Plaintiff had committed a criminal offence by embezzling money from Defendant's company Maitland Furniture, Inc.

4. Defendant Kafka states that he has "proved" Plaintiff had committed a criminal offense; the burden of such "proof" rests with Defendant.

5. Defendant's statement of libel per se is that Plaintiff had been <u>proved</u> to have embezzled money from Maitland Furniture, Inc. (satisfying the definition of libel per se).

> **A defamatory statement that is communicated in a fixed medium and is considered to be so harmful on its face that the plaintiff need not prove special damages. Examples of libel per se are statements that: (i) relate to the person's business or profession to the person's detriment; (ii) <u>falsely claim that the person committed a crime of moral turpitude</u>; (iii) imputes unchastity on the person; or (iv) claim that the person suffers from a loathsome disease.**

6. Defendant fails to prove "embezzlement," alleging, with no independent verification of Plaintiff's signature, only that Plaintiff countersigned, as a third party, two checks in 2006 and 2007 made out to Plaintiff's husband c/o Trifecta Gaming USA, Inc. (See Federal Rules of Evidence 703).

3

7. Tax returns prepared by Thomas Kafka's accountant for Trifecta Gaming USA, Inc. for the 2006 and 2007 tax years show zero gross and zero net income for Trifecta Gaming USA, Inc. Defendant alleges Plaintiff embezzled money from a company that reported no income to the IRS. **(Ex. B tax filings for Trifecta Gaming in 2006 and 2007).**

8. Defendant in his Interrogatories and answers demonstrates that (a) he does not have sufficient information to assert any "proof" of embezzlement from Maitland Furniture, Inc., and (b) he cannot produce any documentation to support Plaintiff has embezzled money from Maitland Furniture, Inc.

9. The allegation that Plaintiff was guilty of committing a criminal offense was stated as a "fact" in the correspondence broadcast in *ex parte* communication to individuals at the Florida Department of Unemployment and the Florida Department of Economic Development. Plaintiff was an innocent nonparty to this matter. Plaintiff alleges this was relayed to others as well.

10. Defendant is not protected by privilege. Communication with the Florida Division of Unemployment Appeals was *ex parte* in violation of 60BB-6.007. **(Ex. C regulations from Florida Department of Economic Opportunity (DEO): requirements of 60BB-6.007. )** Furthermore amendments to Fla. S. 443.041(3) have changed this statute from one of absolute privilege to one of qualified privilege. Defendant's statements of proof of a criminal offense by Plaintiff without meeting the requirements of such proof constitute malice. Malice abrogates qualified privilege. Plaintiff can find no qualified privilege that would shield Thomas Kafka from making such statements about a nonparty to the unemployment proceedings. Statements of

"fact" without "proof" constitute negligence as well as malice **(Exhibit D Kafka depo Page 17 Lines 16, 19),** both of which defeat a claim of qualified privilege. S. 433.041(3) is now revised to read "**between**" employee, employer, and the unemployment agency or its agents. Plaintiff has no connection to the proceedings as she was never an employee.

11. The vacated decision by the Unemployment Appeals Commission is void and no longer holds any legal authority. Later examination by the UAC and their fraud investigation unit found no fraud and no misconduct by Plaintiff's husband. Furthermore, in deposition testimony of James Bellflower of the Florida Office of Economic Development, Mr. Bellflower stated he saw no evidence or "proof" to substantiate Defendant Kafka's claims of embezzlement by Plaintiff **(Ex. E Bellflower depo. Page 51 Lines 1-15),** contrary to Defendant's unsupported defense. Defendant failed to appeal the unemployment decision in Plaintiff's husband's favor in September 2010, when he was required to do so.

12. Defendant Kafka filed no police report alleging embezzlement, filed no claim with his insurance carrier, did not contact Plaintiff or Plaintiff's husband regarding the alleged embezzlement, and conducted no investigation by any outside agency. And when Thomas Kafka filed a civil action, in February of 2010, against Plaintiff's husband (later dismissed for lack of prosecution) **(Ex. F),** the cause of action was for trademark infringement with no cause of action for misappropriation of funds or embezzlement. **(Ex.G)** Defendant Kafka claims to have "discovered" the embezzlement on January 9, 2009. Plaintiff's husband was terminated on January 8, 2009. **(Ex.H Kafka Depo page 20 lines 4,6,19) (Exhibit I termination letter).**

13. Defendant has attempted to make this case about Plaintiff's husband, a nonparty to this action, in an attempt to confuse the issues and the Court, instead of addressing the merits of Plaintiff's complaint.

14. E-mail and communications sent to James Bellflower that libeled Plaintiff were not confidential according to the testimony of Mr. Bellflower **(Ex.J Bellflower depo. Page 63 Lines 6,7,8,9,10)**, and the document noted as **(Ex. K from the DEO)** states that if the box below is not checked than the information is not confidential and is subject to Section 443.1715 and Section 119.07(3)(a)[1]. The Connell letter was in the package of documents dated April 10, 2014, supplied by Defendant.

15. Defendant's sole "proof" of Plaintiff's allegation of embezzlement from Maitland Furniture is the two checks made payable to Plaintiff's husband c/o Trifecta Gaming the signatures of which have not been verified in accordance with the Rules of Evidence (Rule 703), and Defendant is unclear of who actually signed the checks **(Ex. L Kafka depo pages 99 lines 12-16, 25 P.100 lines 4-8 -101  lines 23-25  ).**

16. The alleged claim by Defendant, that somehow a third party endorsing a check to "company A" constitutes embezzlement from "company B" is both confusing as well as misleading, and lacks relevance.

17. Defendant's document, the check from Hudson Valley Bank dated 12/04/06, is inadmissible as evidence, as it is unauthenticated; Hudson Valley Bank says there is no longer a record of this check (See Rules of Evidence). **(Ex. M).**

---

[1] 119.07   Inspection and copying of records; photographing public records; fees; exemptions.—
(1)(a)   Every person who has custody of a public record shall permit the record to be inspected and copied by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public records.

**18.** Defendant has distributed his libelous claim to others besides those at the Florida Department of Economic Opportunity. In deposition testimony Defendant states he made numerous copies of the libelous statements via cutting and pasting. **(Ex. N Kafka depo Page 134 line 14, 17-24) (Ex. O that shows 2 versions of the e-mail created at different times: Indicates multiple recipients).**

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

For the Court to determine whether or not a communication is capable of defamation a false and defamatory statement of fact must be made about Plaintiff. If no reasonable person could disagree that the statement is defamatory, the Court can decide the issue as a matter of law.[2] The statement that Plaintiff was proved of the crime of embezzlement can have only one interpretation. All that is necessary to prove the defamatory nature of the statement is that it would lower a plaintiff's esteem in the eyes of any substantial segment of the community: See: *Grant v. Readers Digest Ass'n.*, 151F.2d 733(2nd Cir. 1945). The harmful nature of the broadcast of libel is explained in the Restatement, Second of Torts (§ 568) as the written or printed word or its embodiment in physical form or by any other form of communication that has similar potentially harmful qualities and characteristics. Defamatory claims of libel per se meet a standard in which punitive damages are awarded without proof of injury, only that the defamatory statement had been made claiming one has committed a serious crime. The written and broadcast statement by Thomas Kafka that Plaintiff had been proved to have committed the crime of embezzlement rises to the level necessary to be awarded damages

---

[2] Restatement of Torts § 599-"The defamatory statement may also be one that tends to harm the reputation of another in such a way that it deters third parties from socializing or dealing with him" [or her].

for libel per se. This case is about the right of a private person to the protection of her good name against disparagement and libel. To have one be "proved" of the commitment of a criminal act when no such act occurred is the most debasing and offensive of personal affronts and attacks. As American President Theodore Roosevelt once said, "The one thing I want to leave my children is an honorable name."

There is a line that has been clearly delineated—by common law, statute, and the United States Supreme Court—between opinion, fair comment, and libel and that of the worst libel of all, libel per se, in which one can find themselves not merely accused of a criminal offense without proof but, in this instance, proved of a criminal offense—with neither proof or evidence—of having been convicted of, or committing, a crime. This is especially true when under oath the libeler cannot state with absolute certainly that the victim of this individual's libel had been proved of the crime of embezzlement. Furthermore, Plaintiff has never embezzled anything from Defendant's company or any company or individual ever in her life.

## STATEMENT OF FACTS OF THE CASE

1. In March of 2009 Thomas Kafka through his company Maitland Furniture, Inc., initiated an appeal for the granting of unemployment benefits to Plaintiff's husband, claiming misconduct. **(Exhibit P)** Prior to this, in February of 2009, Defendant Kafka had informed Benjamin of the Agency for Workforce Innovation, Jacksonville office, that there was no evidence of misconduct by Plaintiff's husband. **(Exhibit Q)** The appeal, begun by Thomas Kafka in March of 2009, coincides with Plaintiff's husband's filing for trademark **protection (Ex. R -**

**Plaintiff's husband's letter to Kafka)** in the name of Trifecta Gaming USA, Inc., a company in which Plaintiff's husband and Defendant Kafka were owners, being a distinct and separate corporation from Maitland Furniture, Inc. Plaintiff's husband was never an employee of Trifecta Gaming USA, Inc.  **(Ex. S 2nd request for produc. Of docs Q-14 )**

2. Defendant's appeal of Plaintiff's husband's claim was through a telephonic hearing conducted on May 27, 2009. The appeal was initially granted in favor of Defendant and Maitland Furniture, Inc., in error and was subsequently vacated and dismissed. **(Ex. T order of October 21, 2009 vacating the hearing.)** There has never been a second hearing held. In deposition, Kafka states no second hearing **(Ex. U Kafka depo page 92 line 4,5).**

3. Defendant Kafka attempted to have his appeal reopened several times without success, including filing a fraud claim against Plaintiff's husband with the Florida Department of Economic Opportunity (DEO). The investigation found no fraud on the part of Plaintiff's husband **(Ex. V Janice Connell depo page 32 lines 24-25 )** and, in sworn testimony by James Bellflower of the DEO, found no evidence of embezzlement by Plaintiff.

4. In August of 2011 and in a final attempt to reopen the unemployment decision that was found against Maitland Furniture, Inc., Defendant Kafka authored written statements that Plaintiff (a nonparty to any action regarding Plaintiff's husband, Maitland Furniture, Inc., or Thomas Kafka) had been "proved" of the criminal offense of embezzlement, thus meeting the legal standard of libel per se.

5.   Defendant cannot produce any documents, other than two checks for Trifecta Gaming, which Thomas Kafka claims were discovered on January 9, 2009. (Yet, Plaintiff's husband was terminated from employment of Maitland Furniture on January 8, 2009). This indicates the accusations to DEO were fraudulent, as the checks could not have been the reason for termination if they were discovered at a latter date.

6.   Defendant has not supplied documents to support his new defense that Plaintiff's husband was employed by Maitland Furniture but sold products through Trifecta Gaming.  (Ex. S, 2nd set of prod. Docs Q-12 and Q-13).

**Qualified privilege does not shield Defendant from Plaintiff's claim of libel per se**

One of the standard's for asserting privilege is *Fullerton v. Florida Med. Ass'n, Inc.*, 938 So.2d 587, 592 (Fla. Dist. Ct. App. 2006) (noting that "'defamatory statements made in the course of judicial proceedings by parties, witnesses and counsel are absolutely privileged, no matter how false or malicious those statements might be, provided the statements are relevant to the subject of the inquiry.'") There is no privilege in this matter. (Fla. S. 443.041 (3) one of qualified privilege) The finding in a similar case in Florida's 6th Judicial Division, Civil Circuit *Rohde v. Agora Marketing Solutions* Case No. 09-021314-CI-007, cites the fact that S. 443.041(3) was amended in 1991 changing the interpretation of the statue from one of absolute privilege to that of qualified privilege. Then again in 2006, 443.041(3), the statute was further amended, with the narrowing of the qualified privilege afforded by the statute. No qualified privilege exists to shield Defendant Kafka for the libelous statements made against Plaintiff (a nonparty) in ex-parte communications to the UAC. Furthermore, claims of "proof" that Plaintiff had

committed a criminal offense when no such offense had occurred and defendant offers no proof is libel per se. (Defendant Kafka stated in his deposition that he was not sure if Plaintiff's signature on the two checks in question is hers or that he even cared whose signature it was. **(Ex.W Kafka depo Page 26 lines 14-19).** Defendant's answers to admissions state no outside investigation was conducted **(Ex. X 3rd request for admissions Q-7 )**. Defendant's statements demonstrate malice. Malice abrogates any claim of qualified privilege.

> **Plaintiff, Lareesa Berman, was not a party, a witness, and certainly not a counsel in this latest appeal by Defendant Kafka and furthermore was unaware (as well as her husband) of yet another attempt by Defendant to reopen the unemployment appeal he had begun in March of 2009.**

Defamation is defined in the employment context as any false statement about an employee communicated by an employer to a third party that harms that employee's reputation or deters others from dealing with him or her in a business setting. However, Plaintiff can find no form of privilege or immunity when derogatory and libelous comments are directed against a nonparty in any such "employment communications." There are a few highly specific statutory exceptions to this privilege, such as gratuitous libel of a nonparty. In *Brown v. Collins*, 402 F.2d 209, 211-12 (D.C. Circuit Court, 1986) the libeling of a nonparty (the opposing party's attorney) was found not to be protected by absolute privilege, as the libeling pertained to a nonparty (even though it was the opposing party's attorney).

Defendant's communications to the UAC were *ex parte*. According to the rules governing communications in an unemployment appeal, all parties must be present. Furthermore, if Plaintiff is not a party to any proceedings then no qualified privilege can

exist for the defamatory comments made by Defendant Kafka. According to the Rules for Appeals Before the UAC, 60BB-6.007: Ex-Parte Communications:

### 60BB-6.007 Ex Parte Communications:

> **"No party to the proceeding or any person who has a direct or indirect interest in the proceeding shall communicate with the Commission members concerning the merits of the appeal unless all parties are present or have waived their right to be present."**

In Defendant Kafka's own correspondence he stated, "I asked Connie not to lose sight of the fact that you initially ruled in our favor and that we proved that Chris Berman and his wife embezzled money from our company." When questioned under oath in the deposition of Defendant Kafka, he admitted that he had oral communication with the UAC through Connie De Morazille in which he spoke about his "proof" that Plaintiff had embezzled money from Maitland Furniture, Inc. **(Ex-parte communication).** The letter to Ms. De Morazille is a restatement of what he had discussed in _ex-parte_ oral conversation. **(Ex. Y, Kafka depo page 86, line 3,4,8,9,21,22)** Defendant Kafka's e-mail to James Bellflower that contain the libel per se, asks Mr. Bellflower to forward the e-mail correspondence to the UAC. **Furthermore Janice Connell of the DEO states Kafka's attempt to reopen his vacated appeal was not a judicial proceeding. (Ex. Z Connell depo Page 21 lines 15-19, 21)** As Plaintiff and no less Plaintiff's husband was unaware that such communication to the UAC was taking place, it should be clear by the UAC Rule 60BB-6.007 that this was ex-parte communication. _Delmonico v. Traynor_, So. 3d ___, 2013 WL 535451 (Fla. 2013), a case that overturned the absolute privilege often cited in _Levin, Middlebrooks, Mabie, Thomas, Meyers & Mitchell, P.A. v. United States_

*Fire Insurance Co.* 639 So. 2d 606 (1994)[3]   The Florida Supreme Court held that *ex-parte* communications that contained libelous and slanderous allegations made in a judicial proceeding are not privileged and were actionable. Plaintiff contends that Defendant's defenses of both immunity and qualified privilege are without merit.

**Significance of Opinion of Delmonico v. Traynor**

This decision is important because it significantly limits the use of absolute privilege as a defense to defamation claims against attorneys and others involved in judicial proceedings, where the alleged statements are *ex parte* and occur out of court (or a deposition). According to the regulations of the UAC 60BB-6.007, both parties needed to be present for any conduct of a judicial proceeding. Plaintiff is a nonparty and was not present (and even Plaintiff's husband was not present, whose dispute was with Defendant Kafka and Defendant's company, Maitland Furniture, Inc.) or even aware of the statements made by Defendant Kafka. Hence, all of the communications between Defendant Kafka and James Bellflower, Connie DeMoanzilo, Janice Connell, and any other individual at the Florida Department of Economic Development or the UAC were *ex parte*, and there is no immunity or privilege to these statements, qualified or otherwise, as they were not part of a hearing.

A further threshold issue defeats Defendant's claim of either immunity or qualified privilege exits. While an absolute privilege cannot be lost, this is not true of a qualified privilege. Fla. S. 443.041(3) was amended in 1991 and again in 2006 and 2009 to change the definition of the statute from one of absolute privilege to that of qualified

---

[3] "Alleged defamatory statements should be subject only to a qualified privilege when made in the course of legal representation, but outside of the safeguards of a legal proceeding. Where both parties are not present and there is no opportunity to be heard."

privilege.[4] Plaintiff cites the United States Supreme Court decision in *Sindorf v. Jacron Sales Co.*, Inc. 27 Md. App 53 (1975), in which the Court held, "A conditional privilege may be lost where the person who utters the defamation acts with malice or in utter disregard of the truth." The Court reasoned that the statements that Sindorf had stolen inventory from the Jacron company were made without any factual proof, thus, destroyed any defense of qualified privilege. Defendant has been unable to support with any statute or case law that any privilege (absolute or qualified) protects the libeling of a nonparty to an action.

In this action (*Berman v. Kafka*) Defendant has made claims that meet the definition of libel per se against Plaintiff without proof or evidence to support his written statements (that Plaintiff had been proved to have committed a criminal offense). In Defendant's own words, he "was only 95% certain" that Plaintiff had countersigned two checks made out to Plaintiff's husband's company, Trifecta Gaming USA, Inc. **(Ex. AA Kafka depo page 25 lines 17,18)** Kafka had stated as a fact that he "proved" embezzlement by Plaintiff. Proof of a crime requires that the proof is beyond a reasonable doubt. When Defendant himself states he is "not sure" or that he "assumes" something to be true, his statement fails this requirement. Defendant stated he was unsure if even Plaintiff's husband had signed the checks in question **(Ex. BB, Kafka depo Page 102 line 17-19)** and later stated he "didn't care who signed the checks" **(Ex. W Kafka depo page 26 line 19).** As the burden of proof rests with Defendant (since it was stated by Thomas Kafka unequivocally that he "proved" Plaintiff had embezzled money from his company Maitland Furniture, Inc.), he must demonstrate conclusive

---

[4] 443.041(3) was revised to read "**between**" employee, employer, and the unemployment agency or its agents, and so in no way would this apply to the libeling of an innocent nonparty. The Florida legislature removed the provision of Absolute Privilege from 443.041(3) in 2003.

proof of embezzlement IE Plaintiff was an employee or held a fiduciary position with

Defendant's company and was entrusted with funds. Defendant Kafka has been unable to

produce any such proof that would satisfy the legal definition of embezzlement.

### Standard of proof for embezzlement

**"In embezzlement, breach of fiduciary duty is an inherent element
of the crime."** *United States v. Maurello*, **76 F.3d 1304, 1310
(3d Cir. 1996); see also** *United States v. Sayklay*, **542 F.2d 942,
944 (5th Cir. 1976) ("The essence of embezzlement lies in breach
of a fiduciary relationship deriving from the entrustment of money.").
In order to be convicted of embezzlement, the accused must be entrusted
with another's money or property or have lawful possession by virtue of
some office, employment, or position of trust.**

**Embezzlement as defined by Black's Law Dictionary (7th Edition): 1. The
fraudulent taking (and conversion) of personal property with which one
has been entrusted, esp. as a fiduciary. The criminal intent for
embezzlement – unlike larceny and false pretenses – arises after taking
possession (not before or during the taking). (Plaintiff held no fiduciary
duty or employment with Defendant's companies see Ex A, 2nd request for
admissions Q-7 Kafka depo Ex. CC Pg. 27, lines 19-23)**

**Proof of embezzlement arises after the act is committed and that the embezzler used
funds for their own use (Ex. DD Kafka depo page 102 lines 7-11).**

In sworn interrogatories Defendant Kafka has stated that no investigation by any

qualified authority into the allegation of embezzlement was ever carried out. (**Ex. EE

depo Sheri Cobb page 15, lines 5-17**) This is confirmed in sworn deposition testimony

of Sheri Cobb, of SunTrust Bank, who indicated to the contrary of Defendant's initial

disclosures of Ms. Cobb having knowledge of this alleged investigation and Thomas

Kafka had opened a bank account in the name of Trifecta Gaming two months before it was incorporated in violation of bank rules. **(Ex. FF Sheri Cobb depo page 6, lines 12-18) (Ex. GG _ 3rd amended initial disclosure)** Defendant made a statement of fact, when there were no facts to support the allegation. Defendant libeled Plaintiff and did so with malice, thus eliminating any qualified privilege.

One of the tenets of the American judicial system is the right to be heard. The requirements of the quasi-judicial unemployment proceeding is that all parties to the proceeding—employer, employee, and the unemployment appeals representative—are either present or interact as parties and as such, have the opportunity to support, challenge, or deny testimony related to an unemployment appeal. Yet, according to the law, how is it possible to afford privilege to statements that libel a nonparty if the nonparty has no standing, was never present, or has no legal basis for addressing the quasi-judicial proceeding? This abridges and deprives the nonparty of her right to be heard that is guaranteed by the 14th Amendment of the United States Constitution. As such, the only means of redress the nonparty has is to file a lawsuit for libel against the individual who uttered or authored the libelous statements. If a claim of privilege prevents the nonparty of the right to be heard, then such a ruling is a violation of the nonparty's Constitutional rights and protections of due process.[5] The judicial safeguards of justice of the quasi-judicial proceeding are not afforded to a nonparty to the

---

3. *Hagar v. Reclamation Dist.*, 111 U.S. 701, 708 (1884). "Due process of law is [process which], following the forms of law, is appropriate to the case and just to the parties affected. It must be pursued in the ordinary mode prescribed by law; it must be adapted to the end to be attained; and whenever necessary to the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought. Any legal proceeding enforced by public authority, whether sanctioned by age or custom or newly devised in the discretion of the legislative power, which regards and preserves these principles of liberty and justice, must be held to be due process of law." Id. at 708; *Accord, Hurtado v. California*, 110 U.S. 516, 537 (1884).

unemployment dispute.[6] This reckless broadcast of libel per se without proof constitutes malice and defeats any claim of qualified privilege (*Sindorf v. Jacron Sales Co.*); privileges are qualified or conditional.

Privilege is negated when defamatory publications are made with malice and/or negligence. **(Ex. HH  Kafka depo, "what am I supposed to think?" page 17. Lines 4-9)** Under Fla. S. 119, the e-mails that libel Plaintiff have been made part of the public record in Defendant Kafka's appeal of an unemployment decision made favorable to Plaintiff's husband.

Since 2003, Fla. S. 443.041(3) has been qualified and does not cloak Defendant's false claim that Plaintiff had been proved to have committed a criminal offense with any form of absolute immunity. The revision of the statute in 2003 removed any form of "absolute privilege" that is claimed by Defendant. (See *Am. Ideal Mgmt, Inc. v. Dale Village, Inc...*, 567 So. 2d 497 (Fla. 4th DCA 1990). Defendant's statements were of a malicious intention, as Plaintiff was never a party to any of the proceedings between Defendant and Plaintiff's husband. See *Davis v. Ross*, 754 F.2d 80, 82-83 (2nd Cir. 1986). According to witness James Bellflower of the Department of Economic Development, Defendant's e-mail is considered a public record and is accessible to anyone, under Fla. S. 119.07(3)(a). As such, the potential for damage to Plaintiff is substantial.

**Libeling of Plaintiff to others**: A curious fact arose in the oral deposition of Lora Katsavrias, a former employee of Maitland Furniture and friend of Thomas Kafka. At the close of the deposition, Ms. Katsavrias, who had said she did not know Plaintiff prior to the deposition and claimed to have no knowledge of this case, referred to Plaintiff as

---

[6] A quasi-judicial procedure must provide a right to be heard. The nonparty has no right to be heard in the unemployment appeal process (*Sabariego v. Maverick*, 124 US 261, 31L Ed 430, 8S Ct. 461.

"evil." [Ex. II, Lora Katsavrias depo page 14 line 17, 19, 20). Deponent behaved in a

hostile manner, and it seems likely that Defendant Kafka had made defamatory remarks

about Plaintiff to Ms. Katsavrias even though she had denied this.

**Defendant has based his defense of libel per se on the vacated unemployment
document and the two checks that were part of that hearing.**

**The Law of Void Judgments and Decisions: Supreme Court Decisions on Void**

**Orders** [7]

> **A void judgment is not entitled to the respect accorded a valid
> adjudication, but may be entirely disregarded, or declared
> inoperative by any tribunal in which effect is sought to be
> given to it. It is attended by none of the consequences of a valid
> adjudication. It has no legal or binding force or efficacy for
> any purpose or at anyplace. ... It is not entitled to enforcement
> ... All proceedings founded on the void judgment are
> themselves regarded as invalid. 30A Am Jur Judgments " 44,
> 45. (U.S. Supreme Court opinion on voided judgements)**

Plaintiff cites *Brotherhood of Railway & S.S. Clerks, etc. v. State*, 303 Minn. 178, 193

(Minn. 1975), holding that a claim cannot arise from a void transaction. "A judgment

which is void upon its face, and which requires only an inspection of the judgment role to

demonstrate its wants of vitality is a dead limb upon the judicial tree, which should be

lopped of, if the power to do so exists." *People v. Green*, 71 Cal. 100 [16 pac. 197, 5 Am.

St. Rep 448]. Also see *Renauld v. Abbott*, 116 US 277, 29 L Ed 629, 6S. Ct. 1194. "A

void judgment is no judgment at all and is without legal effect." *Jorden v. Gilligen*, 500

F. 2d 701, 710 (6cir, 1974).

---

[7] The United States Court of Appeals for the Seventh Circuit noted that a vacated judgment
"place[s] the parties in the position of no trial having taken place at all; thus a vacated judgment is
of no further force or effect."

**Fair Comment**

Defendant's use of the defense of Fair Comment is misplaced. Typically this is a defense in the libeling of a public figure or in the case of an action against a media source, yet even this defense in several highly publicized cases is waning. The U.S. Supreme Court has ruled that to protect free speech, statements made about a public person (politician, officeholder, movie star, author, etc.), even though untrue and harmful, are fair comment unless the victim can prove the opinions were stated maliciously—with hate, dislike, intent, or desire to harm. Fair comment is a crucial defense used by members of the media against libel suits. Defendant, Thomas Kafka, is not a member of the media and Plaintiff, Lareesa Berman, is not a public figure. However, even if the Court were to stretch this definition, it still does not absolve Defendant of statements that are clearly defamatory. In *Brown v. Fawcett Publishers* 196 So.2d 465, 473 (Fla. 1967) the Florida Supreme Court ruled that "failure to print a retraction within ten days of notice would constitute some evidence of actual malice on the part of the defendant." **(Ex. JJ 2nd set of admissions, evidence of malice Q- 22 and 24).** The Supreme Court in *Curtis Publishing v. Butts*, 388 U.S. 130, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967), held that prominent public persons had to prove actual malice (knowledge of falsity or reckless disregard of whether a statement is true or false) on the part of the news media in order to prevail in a libel lawsuit. Here it is obvious that Thomas Kafka is not journalist or a representative of a media source and that Lareesa Berman is not a prominent public figure.

When ruling in cases of defamation, courts have a number of considerations to keep in mind. Whether or not the alleged defamation has any basis in truth is only the

first consideration. Courts must also weigh factors such as whether the plaintiff is considered a public figure or a private citizen. While a public figure must show actual malice to survive a motion to dismiss a libel lawsuit, that is not true of a private citizen. (see *New York Times Company v. Sullivan*, 376 U.S. 254 (1964)).

**Pure Opinion**

One can safely state an opinion that others are inept, stupid, jerks, failures, etc. even though these statements might hurt the subject's feelings or diminish their reputations. Such terms represent what is called "pure opinions" because they can't be proven true or false. As a result, they cannot form the basis for a defamation claim. However, if a statement implies some false underlying facts, it would be defamatory. For example, stating that "in my opinion, the mayor killed her husband" is not likely to be a protected opinion. You can't make a statement an opinion merely by prefacing it with "in my opinion." However in this action, Defendant Kafka doesn't even attempt to cloak his claim that Plaintiff had committed a criminal offense, by stating it as "his opinion." Here, Defendant Kafka says that this is a proven fact, meeting the definition of libel per se, where it's not cloaked by any protection given by opinion. While courts have protected non-factual, non-defamatory expressions of opinion, see *Campanelli v. University of California*, 51 Cal.Rptr.2d 891 (Ct. App. 1996), statements of fact, ones that can be tested by a true or false inquiry are not protected. Insofar as under the doctrine of the "Reasonable Person," would a statement of fact, as in, she was proven of assault or bank robbery be construed by a reasonable person as a fact or an opinion? It is clear that when Defendant stated the he "proved" Plaintiff had embezzled money from Maitland Furniture, Inc., he was stating a fact, subject to a true or false test. (See, *Stiner v.*

20

*University of Delaware*, 243 F.Supp.2d 106 (D. Del. 2003)). The Restatement of Torts defines a defamatory communication as one that "tends so to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." (See Restatement (Second) of Torts § 559 (1977)).

A disputed statement also must have a defamatory meaning—that is, it must be capable of harming a person's reputation in the eyes of a reasonable person. If there exists no proof that Plaintiff was ever an employee or held a fiduciary position with Defendant's company and if Defendant cannot produce any evidence other than two checks made payable to her husband, care of Trifecta Gaming (a company in which her husband is an owner and shareholder), which she allegedly countersigned, then the statement is false and there is no defense in a claim of opinion.

### The Defense of Truth

Defendant Kafka has offered the common law defense of "truth" as his defense of Plaintiff's Claim of libel per se. The claim of truth is without merit as Defendant cannot show evidence or proof that Plaintiff had embezzled money from Maitland Furniture, Inc. The crime of embezzlement must contain factors that the offender had a fiduciary position with the company, was in a position of trust, or was an employee. Facts show that Plaintiff was none of these. Defendant has admitted that Plaintiff shares none of the qualifiers of an individual that would even be capable of embezzling money from his company, Maitland Furniture, as well as having admitted no checks written to Maitland Furniture had ever been cashed by Plaintiff or her husband. **(Ex. KK 2nd request for prod. Of docs. Q-17).** In addition, the only "proof" provided was in the form Defendant's allegation that Plaintiff countersigning two checks not made out to Maitland

Furniture, Inc. Any claim of embezzlement is specious. There is no "truth" in Defendant's libeling of Plaintiff. Furthermore, as a result of the unemployment appeal initiated by Defendant and a further investigation by the UAC's fraud division and by the deposition testimony of James Bellflower (of the UAC), there was never any finding of embezzlement by Plaintiff's husband from Maitland Furniture, Inc, no less that of Plaintiff, a nonparty.

Even if there were elements present, this does not satisfy a defense of truth. The 1st US Circuit Court of Appeals ruled in the case of *Noonan v. Staples* No. 07-2159 U.S. (2009) that truth published with "actual malice" gleaned from the context of the statement can give rise to a libel lawsuit. Kafka did not investigate, was unsure, and knew the unemployment decision was vacated and found in favor of Plaintiff's husband. Checks written to Chris Berman c/o Trifecta Gaming are not proof of embezzlement from Maitland Furniture.

As Defendant cannot substantiate any documentation that supports his defense of libel, the Court must find in favor of Plaintiff under Rule 56(c), Summary Judgment.

**Libel per se—Proof of economic damage is not required to be awarded general damages, special damages or punitive damages.**

Libel per se is actionable without proof of economic loss. (See Restatement (Second) of Torts, supra at § 558(d), § 575 comment b.) Four types of statements are actionable without proof of economic loss: statements that constitute libel per se, see *Shafir v. Steele,* 431 Mass. 365, 373 (2000); statements that charge the plaintiff with a crime; statements that allege that the plaintiff has certain diseases; and statements that may prejudice the plaintiff's profession or business, see *Lynch v. Lyons*, 303 Mass. 116, 118-119 (1939). If the statement comes within one of these four exceptions, a plaintiff

22

may recover noneconomic losses, including emotional injury and damage to reputation. (See *Shafir v. Steele*, supra;) Restatement (Second) of Torts, supra at § 622 comment b, § 623 comment a. An undamaged plaintiff may recover damages. See *Shafir v. Steele*, supra; Restatement (Second) of Torts, supra at § 623 special note on remedies for defamation other than damages. On page 13 of Plaintiff's deposition, Plaintiff stated is very damaging if someone obtained these letter Defendant's Counsel agreed with that statement, replying, "Sure." **(Ex. LL_ Depo of Plaitiff page 13 line 8-14).**

## LEGAL STANDARD OF REVIEW AND MEMORANDUM OF LAW

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56( a). A "material fact" is one that "could affect the outcome" of the proceeding. See *Lamont v. New Jersey,* 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.1 0 (1986). If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); see a/so *Matsushita,* 475 U.S. at 587. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *Anderson,* 477 U.S. at 249. Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to

which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) to make credibility determinations or weigh the evidence." The purpose of a summary judgment procedure "is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R. Civ.P. 56, Advisory Committee Note on the 1963 amendments to Rule 56(e).

## CONCLUSION

There is no dispute among the parties of the materials fact of this case that Defendant Thomas Kafka is the author of the statement that Plaintiff cites a libel per se in correspondence sent to the DEO in an attempt to reopen an unemployment appeal for his company, Maitland Furniture, Inc. There is no dispute that Plaintiff was never an employee or held a fiduciary position in Defendant's company, a requirement of a charge of embezzlement. There is no dispute that the unemployment appeal initiated by Thomas Kafka in March of 2009 was reversed and vacated in October of 2009, granting Plaintiff's husband his full benefits. There is no dispute that Thomas Kafka failed to appeal the ruling in favor of Plaintiff's husband in September of 2010, as was required. There is no dispute that Thomas Kafka attempted to reopen the unemployment appeal in late August of 2011, nearly one year later, by sending written correspondence to James Bellflowers and others stating as a "fact" that Plaintiff had been "proved" of the crime of embezzlement. There is no dispute that there was never a second hearing, that the decision of the hearing of May 27, 2009 was vacated and, as such, was rendered void without any legal authority. As the decision by the UAC was vacated and no longer existed and as no further hearing was carried out, correspondence and conversations

between Defendant and members of the UAC and DEO are ex parte. There is no dispute that the two checks that Defendant claims as evidence of embezzlement from Maitland Furniture were written to Plaintiff's husband care of Trifecta Gaming, an entirely different company, in which he was an owner and shareholder and never an employee. There is no dispute that the signatures on the two checks in question have never been verified, as would be required under the Rules of Evidence 703. Plaintiff again states that she has never embezzled money from anyone, at any time; however, the evidence showing the opening of a bank account by Defendant in the name of a corporation two months before it existed and transfers of $237,500 from Trifecta Gaming to Maitland Furniture made by Thomas Kafka and his wife without Plaintiff's husband's knowledge suggest significant financial improprieties by Defendant. **(Ex. KK Q-20 copies of transfer checks)** There is no dispute that Defendant's company has been in violation of Fl. S. 607.0501(5) Lora Katsavrias stated in deposition Maitland Furniture closed in 2006 and Kafka moved north [Wisconsin]. The location, 1711 State Ave., was then occupied by the Fine Design Company **(Ex. NN Lora Katsavrias depo Page 3 line 9,10, 15, 16 Page 15 lines 5-7, 17-25 page 16 lines 1-8) (Ex. OO shows "Fine Design Co. located at 1711 State Ave from 2006 to 2009)**

For the above reasons stated and evidence presented in this Cross-Motion for Summary Judgment there is no dispute that Defendant is guilty of libel per se and Defendant offers no credible defense.

WHEREFORE, Plaintiff Lareesa Berman respectfully asks this Honorable Court to grant her Cross-Motion for Finally Summary Judgment.

Respectfully submitted by
Lareesa Berman
303 Augusta Circle
St. Augustine, Fl 32086

_____

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent on the date set forth below.  Dated: August 1, 2014, and sent by US mail to Todd Springer, the undersigned counsel, 301 West Bay St. Suite 1050, Jacksonville, FL 32202.