IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.:  3:13-CV-01109-JBT

LAREESA BERMAN,

      Plaintiff(s),

v.

THOMAS A. KAFKA,

      Defendant.

_____/

## DEFENDANT'S TRIAL BRIEF

Defendant, THOMAS A. KAFKA, pursuant to this Court's Case Management and Scheduling Order, by and through undersigned counsel, submits its Trial Brief and states as follows:

## FACTUAL BACKGROUND

Thomas Kafka and Plaintiff's husband, Chris Berman, were owners of Trifecta Gaming USA, Inc. until December 26, 2005.  At that time, Plaintiff's husband, Chris Berman, was no longer an owner of Trifecta Gaming USA, Inc. and instead became an employee of Maitland Furniture with the position of Vice President of Sales for Trifecta Gaming USA, Inc. from 2006 until January 2009.  During that time Mr. Kafaka was the owner of both Trifecta Gaming USA, Inc. and Maitland Furniture.  Both companies had business interest in common.  Monies brought in through Trifecta Gaming USA were used toward the expenses for both companies.  In January 2009, Mr. Berman was terminated from his employment with Maitland Furniture for embezzlement.  Thereafter,

1

Mr. Berman applied for unemployment compensation benefits through the Department of Economic Opportunity – Agency for Workforce Innovation ("Agency").  The Agency administers the unemployment compensation reemployment assistance program.  The Agency is an administrative in nature.  As an administrative agency the decisions that are made affect the rights of individuals as part of the quasi judicial process..

Defendant, as the owner of Maitland Furniture, Inc. appealed the determination awarding unemployment compensation benefits to Mr. Berman.  On May 27, 2009, an appeals hearing was held regarding the award of unemployment benefits to Mr. Berman. During that hearing, Defendant presented evidence to the Appeals Referee of embezzlement by not only Mr. Berman, but as part and parcel of the evidence presented regarding Mr. Berman, also by Plaintiff.  Specifically, two business checks were presented, one from 2006 and one from 2007, each improperly made payable to Trifecta Gaming USA, Inc. c/o Chris Berman.  Mr. Berman was not to cash checks meant for Trifecta Gaming.  He was to deposit any such checks into Trifecta Gaming's Suntrust Bank account.  Mr. Berman was not authorized to sign any checks for Trifecta Gaming.

On the back of each of the checks was the signature of Mr. Berman underneath which was printed, "pay to Larysa Berman" with the signature of what Defendant contends is that of Plaintiff's underneath.  In support, Defendant will offer the Warranty Deed for Plaintiff's home, Continuous Marriage Affidavit, Application to Marry and Maitland Furniture payroll checks to Chris Berman which on the back have the same writing including his signature, "pay to Larysa Berman" and the signature of Plaintiff. None of the monies from either check was deposited into the account for Trifecta Gaiming or Maitland Furniture.  As such, it is Defendant's position that Plaintiff took

2

part in or assisted in the embezzlement.  As Defendant testified, had Plaintiff's name and signature not appeared on the back of his company's checks he would not have mentioned her name in the unemployment proceedings.

Thereafter, on May 29, 2009, a decision of the Appeals Referee was issued, following the hearing regarding Defendant's appeal that disqualified Mr. Berman from receiving unemployment benefits for findings of misappropriation of funds.

On October 21, 2009, an order was issued by the Unemployment Appeals Commission vacating the decision issued by the appeals referee on May 29, 2009, that disqualified Mr. Berman from receiving unemployment compensation benefits and remanded for further proceedings because of allegations by Mr. Berman had been disconnected from the telephone toward the end of the hearing. The May 29, 2009, Order was not vacated because no embezzlement had taken place.  Notably, although the matter was remanded for further proceedings, no such hearing ever took place.

The unemployment compensation appeals process continued as a result of various continuances of the proceeds requested from both sides.  On August 20, 2010, an order was issued stating that the prior decision of the Appeals Referee dated March 9, 2010, was reinstated.  The appeal to the determination dated February 18, 2009, was dismissed without prejudice until September 9, 2010.

On October 25, 2010, a Notice of Determination was issued regarding Mr. Berman missing two or more consecutive reporting periods.  One of the requirements to receiving unemployment benefits was reporting to the Agency efforts made to find employment.  Such a Notice is a form of decision making as part of the quasi judicial

process.  The quasi judicial process regarding Mr. Berman's claim for unemployment benefits was continuing.

On February 11, 2011, a Decision of Appeals Referee was issued determining that Mr. Berman was ineligible for the receipt of benefits from February 8, 2009, through October 2, 2010.  All this time, the quasi judicial process was continuing as at any time while one is receiving unemployment benefits, investigations can be conducted and orders rendered affecting that individuals rights as part of the quasi judicial process.

On August 10, 2011, Defendant sent an electronic mail to James Bellflower with the Agency requesting to appeal the ruling awarding Mr. Berman unemployment benefits after finding out he had been receiving benefits from his Quarterly Notice of Benefits Paid statement.  Mr. Bellflower had been employed by the Agency for over five years and had been employed in the unemployment compensation program where he assisted with claims, adjudicating claims and redeterminations.  He has also been responsible for final orders of the Agency as well as drafting and filing legal correspondence.  Mr. Bellflower was familiar with all of the Agency documents referenced in his deposition as well as how they were produced and the role they play in the unemployment compensation process.

On August 12, 2011, Mr. Bellflower responded to Defendant stating that he directed Defendant's request to appeal to the Office of Appeals and a Deputy Clerk was to contact him.

On August 16, 2011, Defendant sent an electronic mail to Mr. Bellflower thanking him for his assistance.  Defendant also explained his reasoning for wanting to appeal the award of benefits to Mr. Berman.  Within this e-mail is the first alleged libel

per se statement, "I asked Connie not to lose sight of the fact that you initially ruled in our favor and that we proved that Chris Berman and his wife embezzled money from our company." Connie was a deputy clerk with the Agency for Workforce Innovation office of Appeals in Jacksonville. Notably, Plaintiff has only set forth a cause of action for libel per se. As such, there should be no allegations of defamation as it relates to what was orally stated to Connie. The request by Defendant to appeal any ruling that was made regarding benefits that may have been awarded to Mr. Berman was a continuation of the quasi judicial process. As a result, and as evidence there of, on September 1, 2011, a Notice of Docketing was issued regarding Defendant's request to appeal.

On September 16, 2011, an order was issued by the Unemployment Appeals Commission as a result of and in response to the electronic mails sent by Defendant to Mr. Bellflower addressing Defendant's Request. The Order stated that Defendant's appeal was forwarded to the Office of Appeals by the Appeals Commission for a hearing before the appeals referee. The Notice of Order actually stated that Defendant had the right to appeal the September 16, 2011, Order issued by the Unemployment Appeals Commission to the District Court of Appeal if he so chose.

On or about August 16, 2011, Mr. Bellflower also forwarded Defendant's concerns to the Benefit Payment Control Unit for an investigation into whether Mr. Berman was working while receiving unemployment benefits. This was ultimately received by Janice Connell in that unit who conducted fraud investigations. Ms. Connell has been employed by the Agency for forty years. During that time she has worked in various departments including initial claims, adjudication, employer protest, benefit timeliness and the benefit payment control section. Ms. Connell can conduct a fraud

5

investigation, as part of her position in the benefits payment control section, at any point during the time a person is receiving unemployment benefits.  As a result, Notices of Determination are issued and a person's rights are affected.  If a person's benefits are terminated as a result of her findings, that person is entitled to appeal.  Ultimately, Ms. Connell's investigations play a role in the quasi judicial process of whether unemployment benefits are revoked or not.  .

Here, the Defendant sent Ms. Connell a package of documents for the investigation into the allegations that Mr. Berman was working while receiving benefits and one of the documents contained the second alleged libel per se statement (attached to Plaintiff's Amended Complaint as Exhibit D.  In this document it states, "part of the money was embezzled by his wife."  Other than the two written statements received by Mr. Bellflower and Ms. Connell of the Agency as noted above, there are no other statements subject of Plaintiff's lawsuit.

Ms. Connell used the documents received from the Defendant as part of her investigation into whether Mr. Berman was employed while receiving unemployment benefits.  The documents sent to Ms. Connell are confidential and remain so today.

Between September 22, 2011, and October 13, 2011, Ms. Connell conducted and completed her investigation.  As a result of her investigation a Notice of Determination was issued on October 17, 2011, finding that Mr. Berman was not employed while receiving unemployment benefits.  Regardless, of the finding, Ms. Connell's findings and the issuance of the Notice of Determination were a continuation of the quasi judicial process.  In fact, the Defendant could have even appealed the Determination if he chose

6

to.  Ms. Connell testified that even through the time of her deposition in April 2014, the Defendant could have appealed the decision.

## DISPUTED ISSUES OF LAW LIKELY TO ARISE AT TRIAL

**A.**     It is Defendant's contention that the alleged libel per se statements are protected by a qualified privilege.  In Florida, the elements of a qualified privilege in the context of defamation are good faith, interest to be upheld, a statement limited in scope to a specific purpose, published on a proper occasion, and published in a proper manner.  Shaw vs. R.J. Reynolds Tobacco, Co., 818 F.Supp 1539 (M.D. Fla. 1993); Nodar vs. Galbreath, 482 So.2d 803 (Fla. 1984).  Where the circumstances surrounding a defamatory communication are undisputed, or are so clear under the evidence as to be unquestionable, then the question of whether the occasion upon which they were spoken was privileged is a question of law to be decided by the Court.  Nodar, 482 So.2d at 810 citing Abraham vs. Baldwin, 52 Fla. 151 (1906).

Here, it is unquestioned that the statements made by Defendant were to employees of the Department of Economic Opportunity whose employment dealt with the unemployment compensation process.  It is undisputed that Defendant's statements to James Bellflower were made in an attempt to appeal a prior decision awarding unemployment benefits to Chris Berman.  Clearly, the Defendant, as owner of Maitland Furniture, had an interest to be upheld in fighting the receipt of unemployment benefits.  Additionally, it is clear that Defendant's statements to Mr. Bellflower were published on a proper occasion an in a proper manner, that being an electronic mail.  Mr. Bellflower, as an employee of the Department of Economic Opportunity, forwarded Defendant's request to the Office of Appeals.  Lastly, the scope was limited in a proper manner.

7

Specifically, Defendant referenced his intention to appeal the prior decision and that he had previously proven that Chris Berman and his wife, Plaintiff, had embezzled money from his company.  Plaintiff was referenced in the statement simply because her name appeared on the back of the subject business checks which were embezzled.  As Defendant testified, had her name not been on the back of the checks, which were part of the evidence presented to the Appeals Referee during the May 27, 2009, hearing, her name never would have come up.

As for the statement to Janice Connell, it is undisputed that the documents sent to her which included the statement at issue were sent because of Defendant's belief that Chris Berman was working while receiving unemployment benefits.  As a result, he sent Ms. Connell documents in an attempt to establish same as she was employed in the Benefits Payment Control Section and investigated fraud for the Department of Economic Opportunity.  Clearly, Defendant had an interest to be upheld in making the statement at issue because his company, Maitland Furniture, was being wrongly charged unemployment compensation benefits for Chris Berman.  It is just as clear is that the statements were made in a proper manner on a proper occasion to Ms. Connell as part of her job of investigating fraud on behalf of the Department of Economic Opportunity.  The statement was properly limited in scope to the unemployment proceedings.  Again, as part and parcel of the evidence previously presented in the May 27, 2009, appeals hearing, which included the two business checks at issue with what Defendant believes is Plaintiff's signature on the back, Plaintiff was referenced to Janice Connell.  Had her name not been on the back of the checks it would not have come up.

As a result, there is no dispute as to the circumstances surrounding the publication and as such this Court should find as a matter of law, as is required, that Defendant had a qualified privilege in making the statements subject of this lawsuit. <u>Nodar</u>, 482 So.2d at 810 citing <u>Abraham vs. Baldwin</u>, 52 Fla. 151 (1906). This falls in line with the requirements set forth in the Florida Standard Jury Instructions 405.9. Here, this Court should find as a matter of law that the statements at issue are afforded a qualified privilege.

As a general rule, there is a presumption of malice where statements are defamatory per se, but that presumption ceases to exist where the defendant has a qualified privilege to make the statements. Instead the plaintiff then ahs the burden of rebutting a presumption of good faith. <u>Shaw vs. R.J. Reynolds Tobacco, Co.</u>, 818 F.Supp 1539 (M.D. Fla. 1993) citing <u>Axelrod vs. Califano</u>, 357 So.2d 1048 (Fla. 1st DCA 1978). A jury question is only created as to the issue of express malice where there is sufficient evidence that the qualified privilege has been abused. <u>Id</u>. Express malice has been defined as ill will, hostility, evil intention to defame and injure and is a very high standard for a plaintiff to meet. <u>Id</u>. citing <u>Montgomery vs. Knox</u>, 23 Fla. 595 (1887). Where a person speaks upon a privileged occasion, but the speaker is motivated more by a desire to harm the person defamed than by a purpose to protect the person or social interest giving rise to the privilege then it can be said there was express malice. <u>Nodar vs. Galbreath</u>, 482 So.2d 803 (Fla. 1984). Here, the record is void of any evidence of express malice. As Defendant testified, had Plaintiff's name not appeared on the back of one of his businesses checks from which the funds were never deposited, her name never would have come up in the statements to Mr. Bellflower and Ms. Connell of the

Department of Economic Opportunity.  As such there is no material issue of fact for the jury as to malice.

**B.**    It is Defendant's contention that the alleged libel per se statements were substantially true and made with good motives.  Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the "gist" or the "sting": of the statement is true.  Klayman vs. Judicial Watch, 2014 WL 2158418 (Fla. S.D. 2014) citing Smith vs. Cuban Am. Nat'lFound., 731 So. 2d 702 (Fla. 3rd DCA 1999) (explaining that falsity only exists where "the publication is substantially and materially false, not just if it is technically false").  "A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." Id. at 706.  A determination of whether the statements are substantially true is normally a question for the trier of fact.  Restatement (Second) of Torts §161 (1977); Jews fo Jesus, Inc., 997 So.2d at 1108.  However, if the evidence is so overwhelming that any other conclusion would be unreasonable, the court may direct the jury to make the proper finding.

Here, it is the Defendant's position that the statements that Plaintiff embezzled money were substantially true.  Specifically, Defendant will offer evidence including the two checks at issue, as discussed above, improperly made payable to Trifecta Gaming USA, Inc. c/o Chris Berman.  Both checks had Chris Berman's signature on the back as well as what Defendant contends as Plaintiff's signature.  As an employee of Maitland Furniture, Mr. Berman was not to endorse checks over to his wife.  In fact he was not an authorized signer on the Suntrust bank account for Trifecta Gaming.  He could only

deposit checks.  Neither check was deposited into either the account for Trifecta Gaming or Maitland Furniture.

Defendant will present an Application to Marry, Continuous Marriage Affidavit and Property Deed all bearing Plaintiff's signature for comparison by they jury to the signature on the checks at issue.  Additionally, Defendant will present Maitland Furniture Payroll checks to Chris Berman which have on the back the same writing as on the back of the checks at issue, being his signature, print stating, "pay to Larysa Berman" and Plaintiff's signature.  Federal Rule of Evidence 901(b)(3) allows the jury to compare handwriting.  The nature of these documents is more than sufficient to establish a reasonable likelihood that the signatures contained therein were Plaintiff's for purposes of authentication so that the jury can compare them to the signatures contained on the subject checks.  See U.S. vs. Miller, 985 F.Supp. 1284 (D.Kan 1997); U.S. vs. Bowles, C.A.1, 2014 WL 1797831 (Mass. 2014).   In the absence of extreme circumstances, handwriting comparisons may be made by jurors and conclusions drawn from them, either in the presence or absence of an expert opinion.  U.S. vs. Woodson, 526 F.2d 550 (Cal. 1975).  As a result, the jury will find that the signature on the back of the subject checks is that of Plaintiff.

Although Plaintiff will likely argue that she was not an employee of Maitland Furniture and therefore could not technically have committed embezzlement because of the lack of a fiduciary relationship, this is no consequence.  The context of the statement must be considered in determining if the gist or sting associated with it differs from the actual truth.  Klayman vs. Judicial Watch, 2014 WL 2158418 (Fla. S.D. 2014) citing Fidelity Warranty Serv., Inc. vs. Firstate Ins. Holdings, Inc., 74 So.3d 506 (Fla. 4th DCA

2011).  Defendant has testified that he made the alleged libel per se statements because she was an accomplice to embezzling money from his company.  She assisted in embezzling the money.  The gist or sing of the statement is substantially similar to that of her embezzling money.

**C.**     It is Defendant's contention that the statements made to James Bellflower and Janice Connell were pure opinion and therefore not actionable.  Statements of pure opinion are not actionable as defamation because they are protected by the First Amendment.  Morse vs. Ripken, 707 So.2d 921 (Fla. 4th DCA 1998).  Pure opinion occurs when the defendant makes a comment or states an opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public.  Johnson vs. Clark, 484 F.Supp 2d 1242 (Fla. M.D. 2007) citing From vs. Tallahassee Democrat, Inc., 400 So.2d 52 (Fla. 1st DCA 1981).  More pointedly, the facts upon which the opinion is based must be stated and disclosed *or known to the audience to whom the publication is made* to not be actionable.  Scott vs. Busch, 907 So.2d 662 (5th DCA 2005).  Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication.  Id..  As a result, a statement is not protected as pure opinion if it implies the existence of undisclosed defamatory facts as its basis.  Id.  citing LRX, Inc. vs. Horizon Assoca. Joint Venture, 842 So.2d 881 (Fla. 4th DCA 2003); Sternbridge vs. Mintz, 652 So.2d 444 (Fla. 3rd DCA 1995) (quoting Restatement (Second) Torts §556 (1977).  Whether a statement is one of fact or one of opinion is a question of law for the court.  Johnson vs. Clark, 484 F.Supp 2d 1242 (Fla. M.D. 2007).

Here, Defendant's August 16, 2011, electronic mail to James Bellflower of the Agency stated, "I asked Connie not to lose sight of the fact that you initially ruled in our favor and that we proved that Chris Berman and his wife embezzled money from our company." This electronic mail refers to the appeal proceedings and order of May 29, 2009, which disqualified Chris Berman from unemployment benefits due to misappropriation of funds based upon the evidence presented by Defendant at that hearing which included the two checks at issue in this case with what Defendant contends was Plaintiff's signature on the back. These checks were part of the hearing conducted on May 27, 2009, and mentioned in the transcript of the May 29, 2009, hearing. All of which was available to Mr. Bellflower as an employee of the Agency. Additionally, when the Defendant sent this electronic mail he was sending it to the Agency to appeal a prior decision and as such the electronic mail should be treated as being sent to the Agency and not one particular person. Specifically, the "audience" that the electronic mail was sent to, the Agency which administers unemployment proceedings, had the facts available. Either way, Defendant's opinion that he had proven that Chris Berman and Plaintiff had embezzled money from his company was based upon facts available to the reader be it James Bellflower as an employee of the Agency or the Agency as a whole and as such said statement is not actionable.

The same argument applies to the document sent to Janice Connell of the Agency. The facts to support Defendant's opinion that part of the money Mr. Berman was terminated for was embezzled by Plaintiff are contained in the evidence presented at the May 27, 2009, appeals hearing (including the two checks at issue), the hearing transcript

as well as the May 29, 2009, order issued by the Appeals Referee.  As such said statement is not actionable.

      **D.**    It is Defendant's contention that the alleged libel per se statements are privileged and non actionable.  Florida recognizes an absolute privilege for statements made during the course of judicial and quasi judicial proceedings.  Specifically, Florida law provides for immunity from all tort claims based on an act occurring during the course of a judicial proceeding so long as the act has some relation to the proceeding. Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. vs U.S. Fire, 639 So.2d 606, 608 (Fla. 1994).  The purpose of the litigation privilege is to balance two competing interests, the right to enjoy a reputation unimpaired by defamation, and the right to full disclosure of facts during a judicial proceeding.  Id. at pg. 608.  The litigation privilege extends to all acts during litigation, "so long as the act has some relation to the proceeding." Id.

      In Echevarria, McCalla, Raymer, Barrett & Frappier vs. Cole, 950 So.2d 380 (Fla. 2007), the court again examined the litigation privilege and confirmed that the policy reasons for adopting a rule of immunity for actions taken in the course of judicial proceedings is the necessity for candid and unrestrained communications in those proceedings, free of the threat of legal actions predicated upon those communications in the defense or prosecution of an action.

      As noted above, Florida's litigation privilege applies equally to statements made during the course of a quasi judicial proceeding such as we have in this case, i.e. the two statements sent to the Agency as part of the unemployment compensation proceedings regarding the benefits applied for by Mr. Berman.  Statements made during the course of

a quasi judicial proceeding are absolutely privileged.  <u>Gandy vs. Trans World Computer Tech. Grp.</u>, 787 So.2d 116, 119 (Fla. 2nd DCA 2001).  In <u>Gandy</u>, allegedly false and defamatory affidavits submitted in response to the Equal Employment Opportunity Commission's investigation of an age discrimination claim were found to be absolutely privileged.  <u>Id</u>.  In <u>Suarez vs. School Bd. Of Hillsborough County, Fla</u>, 2014 WL 6536 M.D. Fla. 2014), statements made by the School Board during an Equal Employment Opportunity ("EEOC") investigation were absolutely privileged as the EEOC was a quasi judicial entity.   Proceedings regarding unemployment compensation are also quasi judicial.  <u>Pearl vs. Omni Intern of Miami, Ltd</u>, 439 So.2d 316.

On August 10, 2011, Defendant, unaware until that time after receiving his Quarterly Notice of Benefits Paid statement that Mr. Berman was receiving unemployment benefits, sent an electronic mail to James Bellflower, an employee of the Agency, requesting to appeal the ruling awarding Mr. Berman unemployment benefits. On August 12, 2011, Mr. Bellflower responded to Defendant stating that he directed Defendant's request to appeal to the Office of Appeals and a Deputy Clerk was to contact him.  On August 16, 2011, Defendant sent an electronic mail to Mr. Bellflower thanking him for his assistance.  Defendant also explained his reasoning for wanting to appeal the award of benefits to Mr. Berman.  Within this e-mail is the first alleged libel per se statement, "I asked Connie not to lose sight of the fact that you initially ruled in our favor and that we proved that Chris Berman and his wife embezzled money from our company."  Connie was a deputy clerk with the Agency for Workforce Innovation office of Appeals in Jacksonville.  The request by Defendant to appeal any ruling that was made

regarding benefits that may have been awarded to Mr. Berman was a continuation of the quasi judicial process.  .

As furtherance of that fact and in support of Defendant advancing a defense against the claim for unemployment benefits, on September 1, 2011, a Notice of Docketing was issued by the Unemployment Appeals commission as a result of Defendant's request to appeal.  Furthermore, on September 16, 2011, an order was issued by the Unemployment Appeals Commission as a result of and in response to the electronic mails sent by Defendant to Mr. Bellflower's part of addressing Defendant's Request.  The Order stated that Defendant's appeal was forwarded to the Office of Appeals by the Appeals Commission for a hearing before the appeals referee. . As such, any ruling on Defendant's request to appeal would need to be made by the Office of Appeals first which is why the Appeals Commission forwarded Defendant's request to them. The Notice of Order actually stated that Defendant had the right to appeal the September 16, 2011, Order issued by the Unemployment Appeals Commission to the District Court of Appeal if he so chose.  Defendant was exercising his right to appeal a prior order which was issued without prejudice as part of the quasi judicial process.  This matter is distinguishable from Clough Marketing Services, Inc. vs. Main Line Corp., 2007 WL 1430404 (N.D. Ga. 2007), where statements were made after the matter had settled and were not made in the prosecution or defense of a claim but merely to comply with certain conditions of settlement.    Here, Defendant's request to appeal, which included the alleged libel per se statement sent to Mr. Bellflower, was made as part of his defense against Mr. Berman receiving benefits and triggered an Order to issue not only from the Appeals commission but also a referral to the Office of Appeals.  As noted

16

above, an unemployment claim remains active until the benefits are exhausted or are no longer payable.  The timing of the request to appeal is irrelevant as it was formally responded to by the Agency.  Additionally, whether Defendant chose to ultimately follow through with the appeal is of no consequence.

In <u>Foster vs, Select Medical Corporation</u>, 2013 WL 764780 (M.D. Fla. 2013), the court found that statements made to federal and state agencies, including the State of Florida unemployment claims program, regarding the circumstances surrounding plaintiff's termination were absolutely privileged.  The court cited to <u>Gandy</u>, 787 So.2d 116, "[D]efamatory words published during the course and scope of a judicial or quasi judicial proceeding are absolutely privileged if they are connected with, or relevant or material to the cause at hand or subject of inquiry."  Defendant's statements to Mr. Bellflower as an agent of the Agency (who was not an employee of the Appeals Commission at the time contrary to Plaintiff's expected argument. were clearly relevant and material to Mr. Berman's claim for unemployment benefits as he was seeking to appeal a decision awarding him those benefits.

As for the second allegedly libel per se statement, on or about August 16, 2011, Mr. Bellflower also forwarded Defendant's concerns to the Benefit Payment Control Unit for an investigation into whether Mr. Berman was working while receiving unemployment benefits.  This was ultimately received by Janice Connell in that unit who conducted fraud investigations.  Ms. Connell can conduct a fraud investigation at any point during the time a person is receiving unemployment benefits.  As a result of her investigations, Notices of Determination are issued and a person's rights are affected.  If a person's benefits are terminated as a result of her findings, that person is entitled to

appeal.  Ultimately, Ms. Connell's investigations play a role in the quasi judicial process of whether unemployment benefits are revoked or not.

Here, the Defendant sent Ms. Connell a package of documents for the investigation into the allegations that Mr. Berman was working while receiving benefits and one of the documents contained the second alleged libel per se statement (attached to Plaintiff's Amended Complaint as Exhibit D).  In this document it states, "part of the money was embezzled by his wife."  Ms. Connell used the document received from the Defendant as part of her investigation into whether Mr. Berman was employed while receiving unemployment benefits.  The documents sent to Ms. Connell are confidential and remain so today.

Between September 22, 2011, and October 13, 2011, Ms. Connell conducted and completed her investigation.  As a result of her investigation a Notice of Determination was issued on October 17, 2011, finding that Mr. Berman was not employed while receiving unemployment benefits.  Regardless, of the finding, Ms. Connell's findings and the issuance of the Notice of Determination were a continuation of the quasi judicial process.  In fact, the Defendant could have even appealed the Determination if he chose to.

As stated in Foster, "absolute immunity applies in many "professional, licensing, and administrative proceedings," such as worker's compensation, unemployment compensation, labor grievances, and EEOC investigations." citing: Feldman vs. Glucroft, 522 So.2d 798, 801 (Fla. 1988).  In Foster, the plaintiff complained of statements made during an unemployment claim investigation.  Id. at pg. 8.  Here, Defendant's letter as part of the package sent to Ms. Connell was for her unemployment

18

fraud investigation, an integral part of the unemployment compensation proceedings, and as such should be afforded an absolute privilege pursuant to Florida's litigation privilege. As is evidenced by the issuance of the Notice of Determination on October 17, 2011, the quasi judicial proceedings continued as the unemployment claims proceedings continued and the rights of individuals could have been affected had Ms. Connell found fraud.

### 1.    The Effect of Delmonico vs. Traynor

The Defendant anticipates Plaintiff arguing that Defendant's communications with James Bellflower and Janice Connell were ex-parte and as a result Florida's absolute litigation privilege is not applicable.  In support, Plaintiff will likely argue that Defendant violated Uniform Appeals Commission 60BB-6.007 which prohibits ex-parte communications with Uniform Appeals Commission members.  This is subject of one of Defendant's Motions in Limine.  As stated therein, this argument is misplaced as neither Mr. Bellflower nor Ms. Connell were Uniform Appeals Commission members.

Furthermore, the holding in Delmonico vs. Traynor, 116 So.3d 1205 (Fla. 2013), is very narrowly tailored to the absolute privilege not applying to an attorney's alleged defamatory ex-parte out of court statements to potential, nonparty witnesses.  Here, the facts are a complete opposite.  However, the court in Delmonico stated, "In cases where this Court has applied the absolute privilege to issues involving defamation, the defamatory statements at issue were made either in front of a judicial officer **or in pleadings or documents filed with the court or quasi judicial body**." at. 1217.  That is exactly what we have in this case.  Specifically, both alleged libel per se statements were published to the Agency, the quasi judicial body.   As a result, if anything, the Delmonio decision supports the application of the absolute litigation privilege.

## <u>CERTIFICATE OF SERVICE</u>

We hereby certify that on October 30, 2014, a true and correct copy of the foregoing was sent via First Class Mail to the following:  Laressa Berman, 303 Augusta Circle, St. Augustine, Florida 32086.

<u>/s/ Todd T. Springer</u>
Todd T. Springer, Esq.
Fla. Bar No. 178410
tspringer@ls-law.com
Luks, Santaniello, Petrillo & Jones
301 W. Bay Street, Suite 1050
Jacksonville, Florida 32202
Telephone:  (904) 791-9191
Luksjax-pleadings@ls-law.com

Paul S. Jones, Esq.
Fla. Bar No. 149550
psj@ls-law.com
Luks, Santaniello, Petrillo & Jones
255 South Orange Avenue, Suite 750
Orlando, Florida 32801
Telephone: (407) 540-9170