# United States District Court
## Middle District of Florida
## Jacksonville Division

Lareesa Berman – *pro se*,

               Plaintiff

v.                                            Case No.3:13-cv-01109-J-JBT

Thomas A. Kafka,

               Defendant

_____/

## PLAINTIFF'S TRIAL BRIEF

Pursuant to the Court's Scheduling Order of the Case Management Report (Document 20, filed on January 6, 2014), Plaintiff Lareesa Berman–pro se, hereby files her trial brief in support of her case and cause of action of libel per se. This brief sets forth the evidence in Plaintiff's exhibit list, statutes, and authorities that support Plaintiff's action for an award of damages for libel per se committed by Defendant Kafka.

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION ................................................................ ii

TABLE OF AUTHORITIES............................................................................ii

STATEMENT OF FACTS ............................................................................ 1

SUMMARY OF THE ARGUMENT.................................................................5

CONCLUSION ........................................................................................... 20

i

## STATEMENT OF JURISDICTION

1. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this matter

concerns a claim arising out of diversity of citizenship.

2. Venue is proper in the United States District Court for the Middle District of

Florida pursuant to 28 U.S.C. § 1391(b)(1), as Plaintiff resides within this judicial district

and a substantial part of the events giving rise to the claims occurred within this judicial

district.

## TABLE OF AUTHORITIES

**Statutes and Authorities:**

28 U.S.C. § 1332.................................................................................................ii

28 U.S.C. § 1391(b)(1).......................................................................................ii

26 U.S. Code § 1361...........................................................................................17

Fla. S. 119.01......................................................................................................14

Fla. S. 770.02......................................................................................................4

Fla. S. 443.041(3)...............................................................................................2,9

Fla. S. 443.101(9)(b)..........................................................................................3

Fla. S. 443.151(4)(e)..........................................................................................7

Federal Rule of Civil Procedure 8(c)................................................................15

Federal Rule of Civil Procedure 12(b)(6), (7)..................................................15

Florida Rules of Civil Procedure RULE 1.140.................................................15

Florida Statute 607.0820....................................................................................16

Florida Statute 607.1003....................................................................................16

Prosser Law of Torts, § 115 *1204 (4th Ed. 1971)...........................................6

Restatement, Second of Torts (§ 568).............................................................12

Restatement of Torts 2d §570 (1977)..............................................................13

Restatement of Torts § 599............................................................................13

Unemployment appeals regulation 60BB-6.003............................................10

Unemployment appeals regulation 60BB-6.005............................................10

Unemployment appeals regulation 60BB-6.007............................................11

**Cases Cited:**

*Abraham v. Baldwin*, 52 Fla. 151, 42 So. 591 (1906)........................................6

*Bryson*, 174 Ill. 2d at 88...............................................................................12

*Del Monico v. Traynor* No. SC10–1397.,
    February 14, 2013 - FL Supreme Court..............................................5,6,8

*Dunkle v. State,* [98 Fla. 985, 124 So. 725]..................................................11

*Grant v. Readers Digest Ass'n.*, 151F.2d 733(2nd Cir. 1945)........................12

*Lynch v. Lyons*, 303 Mass. 116, 118-119 (1939)...........................................13

*Lawnwood Medical Center Inc. v. Sadow*, 43 So. 3d 710, 729
    (Fla. 4th DCA 2010..................................................................1,5,8,14

*Mays v. Stratton,* 183 So.2d 43 (Fla. 1st DCA 1966)........................................8

*Miami Herald Publishing Co. v. Ane*, 423 So. 2d 376
    (Fla. 3d DCA 1982).............................................................................8

*Montgomery v. Knox*, 23 Fla. 595, 3 So. 211, 217 (1887)............................1,14

*Noonan v. Staples, Inc.*, D. Mass, No. 06-10716...........................................18

*Owen v. Carr*, 113 Ill. 2d 273, 277 (1986)...................................................12

*PENSACOLA MOTOR SALES, INC., d/b/a*
*Bob Tyler Toyota v. DAPHNE AUTOMOTIVE, LLC,*
    *d/b/a Eastern Shore Toyota, and Shawn Esfahani*.............................13

*Pomfret v. Atkinson*, 53 So. 3d 413 (Fla. 4th DCA 2011)...............................................6

*Shafir v. Steele,* 431 Mass. 365, 373 (2000)................................................................13

*Shafran v. Parrish*, 787 So. 2d 177 (Fla. 2d DCA 2001)...............................................13

*Solaia Technology*, 221 Ill. 2d at 579.............................................................................12

*Solaia*, 221 Ill. 2d at 581.................................................................................................12

*Tanner v.] Ebbole*, [88 So.3d 856, 873 (Ala.Civ.App.2011).........................................14

*Wilson v. County of Orange*, 881 So. 2d 625 (Fla. 5th DCA 2004)...............................8

## STATEMENT OF FACTS

On the date of August 16, 2011, Defendant Thomas Kafka made statements of libel per se to the effect that he had "proved" Plaintiff Berman had committed a criminal offense. Per Florida case law, such utterance constitutes libel per se and is *prima fasciae* evidence of malice in it utterance. Under Florida law, a statement is libelous per se when it falsely accuses another of a criminal offense amounting to a felony, or conduct, characteristics, or conditions incompatible with the proper exercise of one's lawful business, trade, profession, or office. The law presumes that false statements about the commission of a serious criminal offense or similar conduct causes harm to an individual's reputation. Malice need not be proved to be actionable. *Montgomery v. Knox*, 23 Fla. 595, 3 So. 211, 217 (1887).

Damages are awarded even if no evidence of harm has been presented. Florida law treats statements of libel per se made in the manner that a written or oral statement such as "we proved" that Plaintiff "embezzled money from our company" (a criminal offence) as evidence of malice without any further need of proof. No invoices, no lost profits, no lost monies, no evidence of damage itself has to be shown to the court before a judgment can be rendered in favor of the plaintiff. (*Lawnwood Medical Center Inc. v. Sadow*, 43 So. 3d 710, 729 (Fla. 4th DCA 2010).

Defendant Thomas Kafka—in e-mails sent both as an inquiry to open an investigation into his allegation that Plaintiff Berman's husband was employed at the time he was receiving unemployment benefits, and as a "thank you" letter to James Bellflower of the Department of Economic Development for his willingness to pass the

1

correspondence containing these allegations to the DEO's fraud investigation unit—stated the following: "I asked Connie not to lose sight that you initially ruled in our favor and that we proved that Chris Berman and his wife embezzled money from our company." (Signed Tom Kafka, President Maitland Furniture, Inc., with the subject of the e-mail as "Update from Maitland Furniture Inc.")  As this correspondence did not pertain to any existing appeal or quasi-judicial proceeding before the Department of Economic Opportunity and since it was made voluntarily to attempt to open an investigation that previously did not exist, libeling a nonparty in the process, this ex-parte communication was outside of the protection of qualified immunity afforded under Fla. S. 443.041(3).

This was the latest attempt by Defendant Kafka in his obsession with harming Plaintiff's family. Plaintiff's husband was a business partner with Thomas Kafka in a corporation known as Trifecta Gaming USA, Inc., in which Plaintiff's husband was an owner and shareholder.  Plaintiff's husband was also an employee of Maitland Furniture, as of 2006. Inc., a corporation owned by Defendant Kafka. On the date of January 9, 2009, Thomas Kafka terminated Plaintiff's husband from Maitland Furniture, Inc. Plaintiff's husband filed for unemployment benefits, and these benefits were granted with Defendant Kafka having noted that the dismissal was for other reasons than misconduct.

In late February of 2009, Plaintiff's husband filed for trademark protection for the name of his company Trifecta Gaming USA, Inc., and for the phrase, "Quality you can bet on." Following this, on a date of March 3, 2009, Defendant Kafka appealed the granting of the unemployment benefits and a  hearing was held on May 27, 2009. In that hearing, Kafka had accused Plaintiff's husband of embezzling company funds from

Maitland Furniture, but the only evidence of such "embezzlement" were documents and payments from Plaintiff's husband's own company, Trifecta Gaming, in which he was never an employee. The Unemployment Appeals Commission initially found in favor of Defendant Kafka, but the finding was reversed and the hearing vacated with a final order of August 20, 2010, finding in favor of Plaintiff's husband. The order provided Kafka 21 days to appeal before the order became final on the date of September 9, 2010. After that date, any quasi-judicial procedure ceased to exist.

It was not until August of 2011 (almost a year after all proceedings had closed) that Thomas Kafka, on his own initiative, sent an inquiry to the Department of Economic Opportunity, in an attempt to open an investigation into Kafka's allegation that Plaintiff's husband was receiving benefits while employed. In a letter dated August 10, 2011, Defendant Kafka states, "We kindly ask that this case be reviewed and our request for an Appeal be granted." In the inquiry correspondence, for no other reason other than malice, Thomas Kafka stated as a "fact" that Plaintiff had committed a criminal offense (embezzlement) and further stated that it was "proved," when no such proof existed and Plaintiff had done nothing wrong. Furthermore, as Plaintiff was never an employee nor ever held a fiduciary position with Defendant's company, and was an innocent nonparty, the egregious accusation was totally false, malicious, and actionable as libel per se.

Thomas Kafka's libelous correspondence occurred after the closing of his original appeal (made final on September 9, 2010) regarding the granting of benefits to Plaintiff's husband, and before any investigation into allegations of fraud claimed by Kafka was conducted in September of 2011. Under Fla. S.443.101(9)(b) Thomas Kafka's appeal was

closed and found in Plaintiff's husband's favor. As such, the correspondence was outside of any litigation privilege.

Janice Connell, of the fraud division of the Department of Economic Opportunity, conducted an investigation of Kafka's claim that Plaintiff's husband had been employed while receiving benefits and found Kafka's allegations to be baseless and closed the investigation. Ms. Connell stated in her deposition that this was not a judicial proceeding, as no evidence of fraud was found and no appeal was made. Defendant Kafka, however, was afforded 30 days to file an appeal of the decision by the DEO with a Florida District Court of Appeal. Defendant Kafka failed to do so. According to the DEO's own internal regulations, no appeal or quasi-judicial procedure was ever commenced. Even if it had been, Kafka's libelous correspondence preceded any action by the DEO, and thus is not afforded any protection or privilege whatsoever.

As a result of Thomas Kafka's libeling of Plaintiff Lareesa Berman, on the date of August 17, 2013, and in accordance with Fla. S. 770.02, Plaintiff sent a demand letter to Defendant Kafka giving him 10 days to retract the libelous statements and issue a letter of apology. Plaintiff in reality afforded Thomas Kafka a 22-day period in which to respond before she filed her action in U.S. District Court. Because Defendant Kafka ignored the demand letter, on the date of September 12, 2013, Plaintiff Berman regretfully filed her action for libel per se. Plaintiff's original complaint was dismissed with leave to amend. An amended complaint was filed on February 24 of 2014, with Defendant's Motion to Dismiss denied on March 20, 2014. Discovery was conducted with depositions taken of Defendant Kafka, Plaintiff Berman, and witnesses James Bellflower, Janice Connell, Lora Katsavrias, Christopher Berman, and Sheri Cobb. On

the date of July 25, 2014, Defendant filed his Motion for Summary Judgment. On August 1, 2014, Plaintiff filed her Cross-Motion for Summary Judgment. On the date of September 29, 2014, both motions by Plaintiff and Defendant were denied, with Defendant abandoning his Motion for Summary Judgment (based solely on litigation privilege) in his reply to Plaintiff's Cross-Motion for Final Summary Judgment, stating "there are clearly material issues of disputed fact which must be determined by the tirer of fact . . ." As such, the case will now move to trial.

## SUMMARY OF THE ARGUMENT

There is no dispute of the material fact that Thomas Kafka is the author of the libel per se; no dispute of the material facts as obtained though discovery that Defendant Kafka made his libelous statement that Plaintiff had been proved of having committed a criminal offense, without any such proof having been obtained by Defendant. Such an accusation uttered as a "fact" constitutes libel per se, and according to Florida case law, such an utterance constitutes malice, thus eliminating any protections that may have been afforded to Defendant Kafka under qualified immunity. Established Florida case law states: evidence of malice without any further need of proof: No invoices, no lost profits, no lost monies, no evidence of damage itself has to be shown to the court before a judgment can be rendered in favor of the plaintiff. (*Lawnwood Medical Center Inc. v. Sadow*, 43 So. 3d 710, 729 (Fla. 4th DCA 2010).

*Del Monico v. Traynor* No. SC10–1397., February 14, 2013 - FL Supreme Court greatly narrowed the old interpretation of immunity and litigation privilege that heretofore existed under *Levin*, now stating that libelous and defamatory statements made outside of a judicial proceeding are not afforded protection by privilege, and even if such

statements relate to a matter before the court, any such privilege is qualified, not absolute. "The Florida Supreme Court quashed our court's original decision; see *Pomfret v. Atkinson*, 53 So. 3d 413 (Fla. 4th DCA 2011), and remanded for further proceedings in light of its decision in *DelMonico v. Traynor*, 116 So. 3d 1205 (Fla. 2013)." *DelMonico* held that an absolute privilege does not extend to defamatory statements made by an attorney during ex parte, out-of-court. It can be established through the evidence, Defendant's own testimony, the testimony of the James Bellflower and Janice Connell of the DEO, and even from Defendant's own Initial Disclosures that the statements that libeled Plaintiff were made almost one-year (11 months and one week) after any quasi-judicial proceeding was closed and prior to the opening of an investigation in September into allegations of fraud made against Plaintiff's husband. (The Department of Economic Opportunity found no evidence of benefits fraud). These statements which were libelous on the face were never a part of any quasi-judicial proceeding, and they were never a part of Defendant Kafka's original appeal of March 2009, and were ex parte, were malicious, and are not protected by any qualified privilege. Qualified privilege is an affirmative defense and the burden of proving it rests with the defendant. Prosser Law of Torts, § 115 *1204 (4th Ed. 1971); *Abraham v. Baldwin*, 52 Fla. 151, 42 So. 591 (1906). Discovery has shown that Defendant Kafka cannot demonstrate that any privilege exists.

Defendant Kafka never stated during his unemployment appeal that Plaintiff had embezzled money from his company. On page 9 of **Defendant's Response and Opposition to Plaintiff's Cross-Motion for Summary Judgment**, Defendant states the sole exhibit of his "proof" of Plaintiff's embezzlement are the "two checks" independent from the unemployment appeals process, stating, **"Defendant is relying upon the two**

6

**checks which are independent in and of themselves."** Clearly this statement by Defendant refutes any claim of privilege as these "two checks" were never a part of any judicial proceeding, and the introduction of them as "evidence" is clearly outside of any litigation protection and *ex parte*. These "two checks" were never presented during Defendant's unemployment appeal. The very wording of the unemployment appeal regulations state "no new evidence may be introduced" in a further appeal." Absent extraordinary circumstances, the UAC cannot consider evidence that was not presented to the appeals referee at the hearing. The Unemployment Appeals Commission can consider evidence only that was presented to the Appeals Referee. In other words, no new evidence can be presented. The Unemployment Appeals Commission looks to see only whether the Appeals Referee made a correct decision based on its review of the evidence presented to the Appeals Referee.

Section 443.151(4)(e), Florida Statutes, provides that an appeal of a Commission order is subject to review **only** by filing a notice of appeal in a district court of appeal in the appellate district in which the issues were decided by the appeals referee. Defendant Kafka could raise his claim that Plaintiff had embezzled money only in a Florida Court of appeal. Only then would any "litigation privilege" apply.

The two alleged checks do not support the claim of embezzlement by Plaintiff or Plaintiff's husband. Because they were never a part of any quasi-judicial proceeding, there is no litigation proceeding.

The Florida Supreme Court found, a qualified privilege applies "to ex-parte, out-of-court statements, so long as the alleged defamatory statements bear some relation to or connection with the subject of inquiry in the underlying lawsuit." The very fact that the

7

information conveyed is false, may in some instances give rise to an inference of bad faith and remove the protection otherwise available to the communication. *Mays v. Stratton*, 183 So.2d 43 (Fla. 1st DCA 1966)." *Miami Herald Publishing Co. v. Ane*, 423 So. 2d 376 (Fla. 3d DCA 1982) (a nonpublic figure in defamation action is not required to make showing of actual malice as element of his cause of action); *Wilson v. County of Orange*, 881 So. 2d 625 (Fla. 5th DCA 2004).

As established Florida case law (*Lawnwood v. Sadow*) states, the utterance of a false statement that Plaintiff had been "proved" of committing a criminal offense constitutes malice without any need for further proof; then it is clear that making such a statement as a fact, and not an opinion, by Defendant is proof of malice. As Defendant Kafka readily admits authoring these statements, the defense of any qualified privilege is moot. Since established Florida case law states that the utterance of a statement deemed to be libel per se constitutes malice, no further proof is required to establish malice.

Defendant's statements are not even afforded the protection of the new standard of qualified privilege. The Florida Supreme Court found in *Del Monico v. Traynor* that "where the statements do not bear some relation to or connection with the subject of inquiry in the underlying lawsuit, the defendant is not entitled to the benefit of any privilege—either absolute or qualified." The subject of the inquiry by Thomas Kafka was a request to James Bellflower asking how to open an investigation into Kafka's allegation that Plaintiff's husband was working while receiving unemployment benefits. The addition of the statement that libeled Plaintiff—a nonparty to any action involving Thomas Kafka, the DEO, or Plaintiff's husband—stating that she had been proved of embezzling money from Maitland Furniture, Inc. (a criminal offense), bears no relation

8

or connection to the subject of Kafka's allegation of benefits fraud. From the discovery record, this claim of embezzlement against Plaintiff, a nonparty, appears for the first time in Thomas Kafka's inquiry letter of August 16, 2011. It was never in the record of Kafka's original appeal of March 2009.

Absolute privilege under Fla. S. 443.041(3) (communications with the Florida Agency for Workforce Innovations) was amended several times, beginning in 1991, by abolishing absolute privilege, replacing it with qualified privilege. Since 2003, the legal standard of the statute specifically does not cloak Defendant Kafka's malicious, misleading, and false statements in immunity. Furthermore, the reading of S. 443.041(3) pertains to procedural matters among the employer, the employee, and the Agency for Workforce Innovation. See Laws 2003 c. 2003-36 (codified at Fla. Stat. S. 443.041(3) (2004)). Further revision of the statute Fla. S. 443.041(3) (2009) further narrows the protection of qualified privilege as follows:

- Between an employer and an employee
- Between the Agency and any of its agents, representatives , or employees
- Between the Agency's tax collection service provider and any of its agents, representatives, or employees
- Between the Agency and its tax collection service provider's agents, representatives, or employees and;
- Between the Agency's tax collection service provider and the Agency's agents, representative, or employees.

Nowhere in this statute is there any hint of privilege provided for the libeling of a nonparty/non-witness to the unemployment proceedings in any conversation or correspondence to the Agency for Workforce Innovation. Defendant Kafka also stated in his deposition testimony that he may have retyped his e-mails that libeled Plaintiff as well

9

as copying and pasting portions of the e-mails. This is evident as several different versions of the e-mails, with significant alterations, exist, leading to the conclusion that there must have been broad distribution, beyond the DEO, of the libelous statements of Defendant Kafka and/or that Defendant has supplied altered documents as part of Discovery in an attempt to avoid liability.

To have invoked any qualified privilege under the General Procedures of the DEO, Defendant Kafka would have first had to file an appeal of the decision that found in favor of Plaintiff's husband on August 20, 2010. He had 20 days to do so, but he did not appeal:

**60BB-6.003 Filing an Appeal.**

**(1) Any person who is entitled by law to notice of an appeals referee's decision may file an appeal of that decision within 20 calendar days after the mailing of notice of the appeals referee's decision to the parties at their last known addresses or, if not mailed, within 20 calendar days after the date of delivery of such notice.**

In order to file a new appeal, for Defendant Kafka's allegation of benefits fraud, Defendant would have to have filed a Brief, and Notice of Appeal would have to be given to all parties. This was never done.

**60BB-6.005 Notice to Parties.**

**(1) All interested parties shall be notified in writing of the pendency of review by the Commission.**
**(2) A copy of all briefs, motions, documents and correspondence filed with the Commission shall be served on the opposing party or parties.**

Defendant Kafka's ex-parte communications made without the presence of Plaintiff's husband and Plaintiff (a nonparty) are not permitted under the General Provisions of the DEO:

> **60BB-6.007 Ex Parte Communications.**
> **"No party to the proceeding or any person who has a**
> **direct or indirect interest in the proceeding shall**
> **communicate with Commission members concerning**
> **the merits of the appeal unless all parties are present or**
> **have waived their right to be present."**

## Libel per se stated as fact is not afforded any protection under the First Amendment

Statements claiming Plaintiff had committed a criminal offense, stated as a "fact," are not protected by claims of either opinion or of fair comment: To make out a case of "embezzlement" under the statutes, it is necessary to show that the accused occupied the designated fiduciary relation and that the property came into his/her possession and was held by him/her by virtue of his/her employment or office; that his dealing with the property constituted a conversion or appropriation of the same; and that there was a fraudulent intent to deprive the owner of his property: *Dunkle v. State,* [98 Fla. 985, 124 So. 725]. No such employment or fiduciary relationship existed between Plaintiff or Kafka's company, and no such criminal charge was ever leveled against Plaintiff. A statement of "fact" that Defendant Kafka asserted having "proved" Plaintiff Lareesa Berman had embezzled money from his company Maitland Furniture was false, unsupported by any proof, and defamatory.

11

The Supreme Court of the United States has identified only a few types of speech not protected by the First Amendment. One type of speech not protected is false statements of fact. A statement of fact is one that is readily understood, is objectively verifiable, and when considered in context, signals that it has factual content. *Solaia*, 221 Ill. 2d at 581. *Solaia Technology*, 221 Ill. 2d at 579. A statement is defamatory per se if its harm is obvious and apparent on its face. *Owen v. Carr*, 113 Ill. 2d 273, 277 (1986). Words that impute a person has committed a crime are considered defamatory per se. *Bryson*, 174 Ill. 2d at 88. "[a] defendant cannot escape liability for defamatory factual assertions simply by claiming that the statements were a form of ridicule, humor or sarcasm." The test is restrictive: a defamatory statement is constitutionally protected only if it cannot be reasonably interpreted as stating actual fact. *Solaia*, 221 Ill. 2d at 581. The statement that Plaintiff was proved of the crime of embezzlement can have only one interpretation. All that is necessary to prove the defamatory nature of the statement is that it would lower a plaintiff's esteem in the eyes of any substantial segment of the community: See: *Grant v. Readers Digest Ass'n.*, 151F.2d 733(2nd Cir. 1945). The harmful nature of the broadcast of libel is explained in the Restatement, Second of Torts (§ 568).

**Damages do not need to be proven to award a plaintiff in an action for libel per se.**

**A defamatory statement that is communicated in a fixed medium and is considered to be so harmful on its face that the plaintiff need not prove special damages. Examples of libel per se are statements that: (i) relate to the person's business or profession**

> to the person's detriment; (ii) <u>falsely claim that the</u>
> <u>person committed a crime of moral turpitude</u>; (iii)
> imputes unchastity on the person; or (iv) claim that
> the person suffers from a loathsome disease.

A statement that a person has committed a crime or done something illegal is one of the classic slander per se categories—that is, the pleader need not allege specific damages to state a cause of action. See *Shafran v. Parrish*, 787 So. 2d 177 (Fla. 2d DCA 2001) and Restatement of Torts 2d §570 (1977). Restatement of Torts § 599: "The defamatory statement may also be one that tends to harm the reputation of another in such a way that it deters third parties from socializing or dealing with him [or her]." *Shafir v. Steele,* 431 Mass. 365, 373 (2000); other statements that are libel per se are statements that charge the plaintiff with a crime; statements that allege that the plaintiff has certain diseases; and statements that may prejudice the plaintiff's profession or business, see *Lynch v. Lyons*, 303 Mass. 116, 118-119 (1939). If the statement comes within one of these four exceptions, a plaintiff may recover noneconomic losses, including emotional injury and damage to reputation. (See *Shafir v. Steele,* supra;) Restatement (Second) of Torts, supra at § 622 comment b, § 623 comment a. An undamaged plaintiff may recover damages. See *Shafir v. Steele,* supra; Restatement (Second) of Torts, supra at § 623 special note on remedies for defamation other than damages.

In *PENSACOLA MOTOR SALES, INC., d/b/a Bob Tyler Toyota v. DAPHNE AUTOMOTIVE, LLC, d/b/a Eastern Shore Toyota, and Shawn Esfahani*, Mr. Esfahani, was libeled by a competitor, Bob Tyler Toyota, calling Mr. Esfahani's dealership a "Taliban Toyota" and intimating to a potential customer of Mr. Esfahani's dealership that

the Iranian-born owner of the dealership was using his profits to fund Middle-East terrorists (a federal crime). Esfahani's competitor's comments were deemed libel per se by the court and jury. The customer, however, was not dissuaded from buying his car from Esfahani's dealership, despite having been told that Mr. Esfahani had been funding terrorists, with Bob Tyler Toyota claiming that as no harm was done to Mr. Esfahani's dealership, he was not entitled to damages. The court and the jury disagreed, awarding Mr. Esfahani 7.5 million dollars in damages, with the court stating: [Bob Tyler Toyota] deserved "the most severe condemnation, its highest blameworthiness, and its most deserving culpability," [*Tanner v.] Ebbole*, [88 So.3d 856, 873 (Ala.Civ.App.2011) (quoting with approval, *Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So.3d 710, 731 (Fla.Dist.Ct.App.2010))]. Because the e-mail is a matter of public record, under Fla. S 119.01, it is potentially accessible to anyone doing a background or investigative check of Plaintiff's history.

Florida law has singled out statements of libel per se for special treatment. Under Florida law, a statement is libelous per se when it accuses with false accusations another of a criminal offense amounting to a felony or conduct, characteristics, or conditions incompatible with the proper exercise of one's lawful business, trade, profession, or office. The law presumes that false statements about the commission of a serious criminal offense or similar conduct causes harm to an individual's reputation. Malice need not be proved to be actionable. *Montgomery v. Knox*, 23 Fla. 595, 3 So. 211, 217 (1887). Damages are awarded even if no evidence of harm has been presented.

### There was no "truth" to the statements of Defendant Thomas Kafka that libeled Plaintiff

Defendant Thomas Kafka is now reaching for an untimely and unsupported defense in his attempt to confuse the Court in now claiming that Kafka meant to say his claim of embezzlement actually pertained to Trifecta Gaming and not Maitland Furniture. This defense should not be given any serious consideration by the Court. Plaintiff's Amended Complaint stated that the libel per se pertained to Maitland Furniture, Inc. The unemployment hearing, Thomas Kafka's appeal, and Thomas Kafka's allegations of benefit fraud unquestionably pertained to Maitland Furniture, Inc. There could never have been unemployment benefits provided to Plaintiff's husband, nor any unemployment appeal in the name of Trifecta Gaming, because Plaintiff's husband was never an employee of Trifecta Gaming USA, Inc. Defendant Kafka's e-mail referenced the docket number of a closed unemployment appeal when he wrote to James Bellflower and libeled Plaintiff. Defendant Kafka signed his correspondence as Tom Kafka-President of MAITLAND FURNITURE, INC., Not Trifecta Gaming USA, Inc., in which he stated as a "fact" that Plaintiff had been "proved" of embezzling money from "our company," not "our companies." Had Defendant Kafka actually meant Trifecta Gaming, there was ample time to address this defense in his Motion to Dismiss, and his Response and Affirmative Defenses. This newly raised and unsupported defense is more in the manner of a five-year-olds' excuse after getting caught with his hand in the cookie jar than a matter of any weight to be raised in a U.S. District Court. This new and questionable defense is not warranted by Florida Rules of Civil Procedure RULE 1.140 DEFENSES: "failure to state a legal defense in an answer or reply," and failure to state a legal defense to a claim (see Federal Rules of Civil Procedure, Rule 12(b)(6), (7). This new defense by Kafka, that he really meant to say Trifecta Gaming, was never raised in

15

Defendant's answers or affirmative defenses, and under Fed Rule of Civ. P. 8(c), Defendant has waived his right to assert it as a defense now.

The introduction of the "two checks" does not constitute anything other than they were not made payable to Maitland Furniture, Inc., nor would they have been. These checks were never made part of vacated unemployment appeal—for which Defendant claims litigation privilege—and as such, their introduction as a defense is irreverent to the case. In sworn deposition testimony of Defendant Kafka, the Defendant states on page 17, lines 4,5,6: "My defense is your name was on the back of company checks that weren't written to my company; they are written to Chris Berman of Trifecta Gaming . . ."

The claim by Defendant Kafka that Plaintiff's husband abandoned his ownership of his company, Trifecta Gaming USA, Inc., in December of 2005, is false and unsupported by law. Trifecta Gaming USA, Inc., is registered with the State of Florida as an "S" corporation. As Trifecta Gaming USA, Inc., is an "S" corporation, the Defendant cannot remove the Petitioner as a shareholder and owner of the corporation without a shareholder meeting and a voting of the shareholders upon the proposed action Florida Statute 607.0820, an amendment filed with the applicable $35.00 fee to the State of Florida, Division of Corporations. Per Florida Statute 607.1003. Prepare a valid contract executing the sale. Identify the parties: the seller and the S-Corp. List the consideration, or assets being exchanged; the stock for the purchasing price. Have the departing member and a corporate officer sign the document as evidence of both of their consent to the agreement. Issue the shareholder a final K-1. The K-1 is a report issued by the corporation informing each shareholder how much of the business's income and losses

they need to include on their personal returns. Check the box in the top right hand corner of the form labeled "Final K-1." In the appropriate boxes, record the departing stockholder's share of income and revenue from the beginning of the corporation's tax year to the day the when the corporation bought back the shares.

Plaintiff's husband was an equal 50% shareholder in Trifecta Gaming as under 26 U.S. Code § 1361: (1) Members of a family are treated as one shareholder. In general for purposes of subsection (b)(1)(A), they shall be treated as one shareholder—(i) a husband and wife (and their estates), and(ii) all members of a family (and their estates). Plaintiff's husband was an owner and 50 % shareholder of Trifecta Gaming USA, Inc., in both 2006 and 2007 and remains an owner and shareholder of Trifecta Gaming to this day, as he has an action before the Volusia County Circuit Court to judicially dissolve Trifecta Gaming for fraud perpetrated by Defendant Kafka (specifically tax fraud).

The Affirmative Defense of "truth" is misplaced, as there is no evidence whatsoever that Plaintiff had embezzled money from Defendant's company as he so stated in correspondence to the Department of Economic Opportunity in e-mails, other correspondence, and in verbal communication. For the crime of embezzlement to even exist, an employer-employee relationship or a fiduciary relationship must exist between the accused and the accuser. Plaintiff was never an employee of Defendant Kafka and was never in a fiduciary position with Defendant or his company. Defendant Kafka had stated in his own testimony that no investigation of his claim of embezzlement was ever carried out and no police report was made. In fact, his only support to an allegation, stated as fact, that Plaintiff embezzled money from Defendant's company Maitland Furniture are two checks (both unauthenticated from the DEO) made out to Plaintiff's

husband and Trifecta Gaming, a company in which Plaintiff's husband is an owner and shareholder. Defendant Kafka had no basis to state as a fact that Plaintiff had been "proved" of the crime of embezzlement. In any claim of embezzlement there would be evidence of missing funds. However, tax documents submitted to the IRS by Mr. Kafka show zero gross and zero net income. Which begs the question of how can anyone embezzle funds from a company that has no income?

Defendant Kafka made the same claims against Plaintiff's husband in an unemployment appeal in March of 2009. The Appeal by Kafka in the name of Maitland Furniture, Inc., was resolved in favor of Plaintiff's husband and closed on September 9, 2010. It was in August of 2011 that Kafka, not content with the decision in favor of Plaintiff's husband, sent an e-mail to James Bellflower of the Department of Economic Opportunity to request an investigation into Kafka's allegation that Plaintiff's husband was employed while receiving benefits. It was in this correspondence that Defendant Kafka libeled Plaintiff without cause and without any relationship to the matter of a request for investigation into an allegation of benefits fraud to potentially appeal the awarding of those benefits. A fraud investigation was carried out in September of 2011, and the DEO found no evidence of benefit fraud, so no appeal was made and no quasi-judicial proceeding was ever in effect.

Furthermore, "truth" is no longer a valid defense when malice exists. The case *Noonan v. Staples, Inc.*, D. Mass, No. 06-10716, involved Staples, the office supply chain, and one of its former employees, Alan Noonan. The Noonan case involves an executive terminated from Staples for falsifying travel expense reports. There was factual evidence to support Staples's claim that Noonan did indeed do exactly what he was

18

accused of doing. Staples sent an e-mail to inform their employees of the incident and to remind them about expense report policy. Noonan then filed suit in federal court against Staples for libel, alleging that Staples' e-mail stating Noonan had violated the company's expense policy harmed his reputation. The federal district court in Massachusetts disagreed, holding that the e-mail was not libelous because it was substantially true. However, the First District Court of Appeal found that that in defamation cases, the long-standing rule that truth is an absolute defense will not apply when the statement(s) in question were made with Actual Malice, as was the case with Alan Noonan and Staples. In the case before this Court, Actual Malice is evident as Defendant Kafka has presented no evidence at all to support his libelous statements other than two checks made out to Plaintiff's husband's company, Trifecta Gaming, and were allegedly countersigned by Plaintiff. Thomas Kafka even stated in his deposition that he not only didn't know whose signature it was on the two checks, but rather he didn't care whose signature it was. Defendant Kafka's claim that Plaintiff had been proved of committing a crime where no such crime had ever taken place is a far more serious and harmful allegation than that of an employee "fudging" expense reports.

As Florida law recognizes a statement deemed libel per se as automatic evidence of malice, Defendant Kafka cannot claim "truth" as a defense. A defense of "truth" is an affirmative defense, and as such, the burden of proof rests with Defendant. As Defendant has stated as a fact, in the past tense, that he "proved" Plaintiff had committed a criminal offense, not "he will prove" in the future tense, then his assertion of "truth" is false and is indefensible. If Defendant had already "proved" Plaintiff had committed a crime, such

19

substantial proof, beyond two alleged checks made payable to her husband and his company, would exist.

## **CONCLUSION**

For the forgoing reasons, Plaintiff's pre-trial brief and exhibits filed with the Court fully support her cause of action for libel per se and fully supports the following:

- Defendant Kafka libeled Plaintiff with intentional malice.
- Defendant Kafka admits this under oath.
- Defendant Kafka's libel was outside the protection of any litigation privilege.
- Defendant Kafka has presented no evidence to support his claim that it was a "fact" that Plaintiff had been "proved" to have committed a criminal offense.
- Defendant's libel per se is not protected speech as opinion or fair comment.
- Under Florida law, a claim for libel per se needs not prove damages to be actionable and to award compensation for both general and punitive damages without further proof having been presented.

## CERTIFICATE OF SERVICE

Respectfully submitted by
Lareesa Berman
303 Augusta Circle
St. Augustine, Fl 32086

_____

I hereby certify that a true and correct copy of the foregoing was sent on the date set forth below.  Dated: October 30, 2014, and sent by US mail to Todd Springer, the undersigned counsel, 301 West Bay St. Suite 1050, Jacksonville, FL 32202.