IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 3:13-CV-01109-JBT

LAREESA BERMAN,

    Plaintiff(s),

v.

THOMAS A. KAFKA,

    Defendant.
_____/

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION UNDER RULE 59 FOR A NEW TRIAL

Defendant, THOMAS A. KAFKA, pursuant to Federal Rules of Civil Procedure 59 serves his Response in Opposition to Plaintiff's Motion Under Rule 59 for a New Trial. The argument in support of this Motion is contained in the following memorandum of law.

## I. MEMORANDUM OF LAW

Federal Rule of Procedure 59 does not enumerate all the grounds for a new trial but speaks instead in broad terms. Pursuant to Rule 59(a), "[a] new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." *See, e.g., George v. GTE Directories Corp.,* 195 F.R.D. 696, 701 (M.D.Fla.2000) (new trial may be granted "for

any reason recognized at common law, even where there is substantial evidence supporting the verdict.").

A party may seek a new trial by arguing that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940); *see also Weisgram v. Marley Co.,* 528 U.S. 440, 452, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000). However, a motion brought pursuant to Rule 59 may not "relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Linet, Inc. v. Village of Wellington, Fla.,* 408 F.3d 757, 763 (11th Cir.2005) (motion to amend or alter judgment was essentially a motion to reconsider the district court's prior summary judgment order). Here, Plaintiff essentially is attempted to relitigate all of the grounds in her prior motion in limine which was denied.

The decision to alter or amend a judgment is committed to the sound discretion of the trial judge. *E.g., American Home Assur. Co. v. Glenn Estess & Assocs., Inc.,* 763 F.2d 1237, 1238-39 (11th Cir.1985). When ruling on a Rule 59(e) motion for new trial, the court must determine "if in his opinion, 'the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.' " *Insurance Co. of N. America v. Valente,* 933 F.2d 921, 922-23 (11th Cir.1991) (quoting *Hewitt v. B.F. Goodrich Co.,* 732 F.2d 1554, 1556 (11th Cir.1984)). "[T]o assure that the court does not simply substitute his judgment for that of the jury, ... new trials should not be granted on

evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence." *Id.* at 923 (quoting *Hewitt* ). "The trial judge's discretion to set aside a jury verdict based on the great weight of the evidence is very narrow." *Hewitt,* 732 F.2d at 1559. The judge must protect against manifest injustice in the jury's verdict, but it is not his role to assess credibility where conflicting testimony has been presented during the trial. *Id.* at 1558-59. Instead, the judge must defer to the jury on the weight to be given to each witness's testimony. *Id.* at 1558-59.

**A.    There were no errors in the jury instructions or verdict form**

Federal Rule of Civil Procedure 51(c) sets forth the procedures that must be followed in order to preserve objections to jury instructions or verdict forms:

(c) Objections.
(1) A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection.
(2) An objection is timely if:
(A) a party that has been informed of an instruction or action on a request before the jury is instructed and before final jury arguments, as provided by Rule 51(b)(1), objects at the opportunity for objection required by Rule 51(b)(2); or
(B) a party that has not been informed of an instruction or action on a request before the time for objection provided under Rule 51(b)(2) objects promptly after learning that the instruction or request will be, or has been, given or refused.

The Eleventh Circuit has interpreted Rule 51 strictly, requiring a party to clearly object to a jury instruction or jury verdict form prior to jury deliberations in order to preserve the issue on appeal. *Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1329 (11th Cir.1999). A party who fails to raise an objection to a jury instruction or verdict form prior to jury deliberations waives its right to raise the issue on appeal. *Id.* citing *Wood v. Pres. of Spring Hill Coll.,* 978 F.2d 1214, 1221 (11th Cir.1992). This ensures the trial judge has an opportunity to correct the error before the jury has begun deliberations.

*Id.* Here, Plaintiff failed to timely preserve any objections to the jury instructions and verdict form and as a result any objections thereto have been waived.

Additionally, so long as the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instructions. *United States v. Starke,* 62 F.3d 1374, 1380 (11th Cir.1995). The issue is "whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled." *see KMS Rest. Corp. v. Wendy's Int'l, Inc. .,* 194 Fed.Appx 591, 601 (11th Cir.2006). It is well established that the failure to specifically object to the form of a verdict before the jury is charged constitutes a waiver of any objection to that verdict form. Thus, a challenge to the form of interrogatories can be made via a post-judgment motion only if first presented and rejected in the form of an objection to the court's charge to the jury. *Golub v. G.W. Gant & Assocs., Inc.,* 863 F.2d 1516, 1521 (11th Cir.1989). Here, Plaintiff failed to timely and properly preserve any objections to the jury instructions or verdict form. Merely submitting a proposed verdict form or jury instruction does not constitute a preservation of the right to challenge the court's instructions unless it is clear that the proposal was specifically rejected by the court and the proposing party objected to the instruction ultimately given. *See, e.g., Industrial Dev. Bd. v. Fuqua Indus., Inc.,* 523 F.2d 1226, 1238 (5th Cir.1975). Although it is the Defendant's belief that all objections have been waived, Plaintiff's arguments will be addressed in the abundance of caution.

Plaintiff argues that Jury Instruction 5 given by the Court was improper in that it was inapplicable to a claim for libel/defamation per se. However, Jury Instruction 5 is directly from the 11th Circuit Court Pattern Jury Instructions (2013) and applies generally

to all cases.  Additionally, Plaintiff's claims are for libel per se are spelled out in Jury Instruction 7 and Jury Instruction 10 contains a section for "nominal damages" which are the damages provided for even if Plaintiff did not prove any damage had been suffered.  As a result, Jury Instruction 5 was in fact proper.

Plaintiff argues that Jury Instruction 7 is improper because it was misleading by stating that "Defendant, Thomas Kafka" denies these claims" when Defendant admitted to making the alleged libel per se statements.  However, Defendant did deny that the statements were false and that they caused her harm which were both claimed by Plaintiff.  As a result, Plaintiff's claim that Jury Instruction 7 was improper is baseless.

Plaintiff argues that Jury Instruction 9 was improper because it states that Defendant stipulated to making the alleged libel per statements while Jury Instruction 7 states that Defendant "denies these claims."  However, Plaintiff fails to convey the jury instructions as a whole and in context where, as noted above, Defendant did deny the claims that the statements were false and caused her harm.  As such, this allegation is baseless.

Plaintiff appears to disagree with Jury Instruction 10 because a portion of the instruction instructs the jury that if they found for her they, "shall award her an amount of money that will fairly and adequately compensate her for such loss, injury or damage as the preponderance of the evidence shows was caused by the statements in question."  Plaintiff goes on to state that general damages are presumed and not proof of injury is necessary.  What Plaintiff fails to point out is that Jury Instruction 10 provided for nominal damages which is the same as general damages in that they did not loss, injury or damage has to be proven to award such damages.  Jury Instruction 10 is from the

Florida Standard Jury Instructions. There was nothing improper with this instruction. Additionally, the undersigned does not recall Plaintiff objecting to this Jury Instruction at the charge conference and as such, any such objection now has been waived.

**B.     There were no errors in the verdict form**

The jury in this matter entered a verdict in favor of the Defendant by finding that the statements at issue were substantially true and made with good motives which was Question 1 on the verdict form. Plaintiff seems to argue that question one should not have read "substantially" true as Defendant's affirmative defense did not state the word "substantially." The failure of the affirmative defense to include the word "substantially" is of no consequence as in general the defense is that of truth. Moreover, the verdict form was worded properly based upon the defense of substantial truth. Plaintiff's argument is without merit.

Plaintiff's remaining arguments as to Questions 3, 4, 5 and 8 are of no consequence as the jury never got past Question 1 and never had to consider any of the language in these Questions.

Lastly, Plaintiff claims that she was prejudiced by the removal of the question of whether the Defendant made the alleged statements. However, as the Defendant admitted to making the alleged statements this was not an issue in the case. In fact, had that question been left on the verdict form and the jury answer that question in the negative there would have been an inconsistent verdict. Therefore, that possibility had to be eliminated.

**C.     Defense Counsel Did Not Engage in Misconduct**

Defense counsel impeached Christopher Berman with a prior sworn deposition transcript which is proper pursuant Federal Rule 613. Plaintiff first argues that because the deposition was unsigned that it somehow was not allowed to be used as impeachment material. First, depositions are never signed by the deponent. The most that will occur is that the deponent wishes to read the transcript and returns an errata sheet with changes. Yet, even when the deposition has been requested to be read by the deponent the errata sheet is not always returned by the deponent. Regardless, this has no effect on the use of the prior sworn testimony for impeachment. Second, Christopher Berman admitted to being deposed as part of the deposition. There is no evidence to suggest because it was unsigned it was improper. Plaintiff's claim is without merit and without support.

Plaintiff claims that she was never given a copy of the 2009 deposition transcript of Christopher Berman, her husband, prior to trial. However, on October 17, 2014, the undersigned attorneys attended an exhibit review and exchange with Plaintiff. During that meeting, counsel for Defendant not only provided Plaintiff with a notebook containing copies of Defendant's proposed exhibits (which Plaintiff failed to do) but also provided her with a second notebook containing impeachment material which may be used at trial. This notebook which was given to Plaintiff contained the 2009 deposition transcript of Christopher Berman. What was not included in that notebook was the 2011 deposition of Christopher Berman. The undersigned informed Plaintiff that there was an additional deposition transcript that was not included in the notebook. On October 22, 2014, Exhibit E to Plaintiff's Motion, Plaintiff followed up with the undersigned asking for a copy of the deposition transcript referenced at the meeting that was not included in the notebook. As a result, on October 23, 2014, the undersigned provided Plaintiff via

electronic mail with a copy of the 2011 deposition transcript to ensure she had all possible impeachment material. Obviously, the October 23, 2014, electronic mail from the undersigned to Plaintiff referred to the 2011 deposition as that was the only one she was missing as she already had in her possession the 2009 deposition. As such, Plaintiff was in possession of the 2009 deposition transcript of Christopher Berman and any claims otherwise are simply untrue. Additionally, it should be noted that it is the Defendant's belief that Plaintiff was aware of the 2009 deposition transcript of Christopher Berman long before she filed suit in this matter as it is the Defendant's understanding that she attended the beginning of the deposition when it was taken in 2009 (as evidenced by the transcript itself) prior to being excluded from the proceedings. There were no false statements or ethical violations. Any such allegations are untrue.

Plaintiff claims that the 2009 deposition transcript was not relevant as it predated the claimed libel per se. However, that is exactly the point behind the transcript. At the time that deposition was taken Mr. Berman told exactly how the ownership of Maitland Furniture and Trifecta Gaming was set up which completely contradicted his in court testimony in this case following the filing of Plaintiff's claim of libel per se. Regardless, Mr. Berman testified at trial contrary to his prior sworn testimony in the 2009 deposition which is exactly the reason impeachment is allowed. Plaintiff claims she is unsure of the "source or accuracy of the deposition" but Mr. Berman admitted to giving the deposition which was taken under oath.

Plaintiff claims that the undersigned misled this Court as to what deposition was intended to be used for impeachment. In doing so, Plaintiff refers to Defendant's Response to Plaintiff's Motion in Limine to Preclude or Exclude Defendant's

Inadmissible Evidence and Inadmissible Defenses. (Doc. #197). However, the statements and arguments made in that Motion were in response to Plaintiff's Motion which only referred to the 2011 deposition transcript. As such Plaintiff's allegations of fraud are misplaced.

**D.     March 26, 2010, Letter was an Exhibit on Defendant's Witness List**

Plaintiff claims that the March 26, 2010, letter from Defendant to the Department of Economic Opportunity should somehow not have been allowed into evidence. This letter was listed on Defendant's Witness List as Exhibit 12 filed October 30, 2014. (Doc. #142.) The same witness list provided to Plaintiff and attached to her Motion as Exhibit I which contains the March 26, 2010, letter although Plaintiff somehow denies this fact. This same letter was Exhibit 5 on Defendant's Amended Witness List filed March 9, 2015. (Doc. 181). Additionally, this letter was provided to Plaintiff during the exhibit exchange on October 17, 2014. Once again Plaintiff alleges misconduct by the defense without any basis.

**E.     Checks were properly admitted into evidence**

The November 24, 2006 and May 27, 2009, checks were obtained via subpoena issued to Yonkers Racing Corporation and Hudson Valley Bank. Upon receipt of the subpoenaed documents the records custodian for each entity provided a certification that the checks were maintained as business records and as such were properly authenticated and admitted into evidence by this Court. Plaintiff's allegations that the checks are not authenticated are baseless.

Plaintiff appears to argue that because the checks are copies they are not admissible. However, the fact the checks are duplicates or copies is of no consequence.

According to Federal Home Loan Mortgage vs. Crittenden, 2012 WL 3023264 (M.D. Alabama), Rule 1003 **clarifies** that a duplicate is admissible to the same extent as an original unless 1) a genuine issue is raised as to the authenticity of the original; or 2) under the circumstances it would be unfair to admit the duplicate in lieu of the original. That Court goes on to state that there is no provision which stats that upon objection by a party a copy is not admissible. To the contrary, it has been the long standing policy to allow photocopies to be admitted as if they were originals..

Expert testimony is not necessary for the comparison of handwriting. Pursuant to Federal Rule of Evidence 901(3) the trier of fact may compare handwriting. Furthermore, pursuant to 28 U.S.C. §1731, the admitted or proved handwriting of any person shall be admissible for purposes of comparison to determine the genuineness of other handwriting attributed to that person.

A jury can compare known handwriting samples with another sample to determine if the handwriting in the latter sample is genuine. U.S. vs. Clifford, 704 F.2d 86 C.A. 3 (PA. 1983). In the absence of an expert opinion, handwriting comparisons may be made by jurors and conclusions drawn therefrom. U.S. vs. Woodson, 526 F.2d 550 (9th Circuit 1975). Here, expert testimony was not required. Defendant introduced the following documents for comparison by the jury to the signature on the back of the subject checks: 1) Plaintiff's Continuous Marriage Affidavit; 2) Application to Marry; 3) Warranty Deed for her home (all of which are public records under Federal Rule of Evidence 901(7)(a)); 4) The payroll checks of Mr. Berman from Maitland Furniture which were endorsed over to Plaintiff. Mr. Berman testified that he would occasionally endorse his payroll checks over to Plaintiff. The checks were authenticated

by Defendant as they were issued by his company, Maitland Furniture. Each of these checks state on the back, as do the checks at issue, "pay to Larysa Berman" below which is her signature; and 5) The letter authored by Plaintiff bearing her signature requesting an apology dated August 17, 2013. There could be no dispute as to the authenticity of the signature on this letter as a copy of it was attached to Plaintiff's Complaint.

It is this Court's burden of determining the genuineness of the handwriting on documents to be used as a standard. U.S. vs. Greiser, 502 F.2d 1296 (9th Cir. 1974). There is no precise method by which a handwriting specimen must be proved to be genuine, but it may be accomplished through direct or circumstantial evidence. U.S. vs. White, 444 F.2d 1274 (5th Circuit 1971). Here, the above documents were trustworthy as is established through the fact that several are official public documents but also through the circumstances surrounding each as noted above. The jury could properly use them for comparison purposes with the handwriting contained on the back of each of the subject checks. Additionally, the Defendant asserts that the jury can determine whether that is her handwriting on the back of the checks purely through circumstantial evidence as well.

### F.  The unemployment hearing transcript and order are not void

The May 2009 hearing transcript was not vacated. The authority Plaintiff relies upon regarding void judgments is misplaced and not relevant as it relates to judgments being void where the court lacks jurisdiction over the parties allowing them to be attacked. That is not relevant in this matter. There was no reason said order could not be used at trial. It was a prior sworn statement that was inconsistent with the testimony of

Christopher Berman at trial and as a result, it was proper to impeach him with it pursuant to Federal Rule 613.

G. **Tax documents were properly excluded**

Plaintiff attempted to introduce into evidence tax filings for Trifecta Gaming USA. However, the filings were not authenticated and were not relevant to the issues in the lawsuit as how the tax filings were prepared and why they were prepared a certain way was not only not relevant but Plaintiff had no way to establish that there was anything improper about the way they were prepared. Additionally, any investigation by the Treasury Department for allegations of tax irregularities was clearly not relevant and unfairly prejudicial. As a result, such evidence was properly excluded.

H. **The weight of the evidence clearly supported the verdict**

The Defendant presented two business checks improperly made payable to Trifecta Gaming USA c/o Christopher Berman. On the back of each check was the signature of Christopher Berman as well as the signature of Plaintiff. Defendant testified that at no time was Christopher Berman to have business checks made payable to himself or endorse over to Plaintiff. At the time of each check Mr. Berman was an employee of Maitland Furniture with the position of Vice President of Sales for Trifecta Gaming and nothing more. At the time the Defendant made the two allegedly libel per se statements he believed, as was supported by the juries verdict, that Plaintiff embezzled money from his company. The jury was properly presented with several other documents with Plaintiff's signature allowing them to compare the handwriting and determine that the writing on the back of each check was in fact that of Plaintiff. The jury rightly chose not

to believe Plaintiff's unsupported and baseless position that it was not her signature on the back of the checks and that her signature was somehow forged by Defendant.

WHEREFORE, Defendant, THOMAS A. KAFKA respectfully requests this Honorable Court enter an Order Denying Plaintiff's Motion Under Rule 59 for a New Trial.

**CERTIFICATE OF SERVICE**

We hereby certify that on April 30, 2015, a true and correct copy of the foregoing was sent via U.S. Mail to the following: Laressa Berman, 303 Augusta Circle, St. Augustine, Florida 32086.

__/s/ Todd T. Springer_____
Todd T. Springer, Esq.
Florida Bar No. 178410
Paul S. Jones, Esq.
Florida Bar No. 149550
Luks, Santaniello, Petrillo & Jones
301 W. Bay Street, Suite 1050
Jacksonville, Florida 32202
Telephone: (904) 791-9191
Facsimile: (904) 791-9196
tspringer@ls-law.com; psj@ls-law.com
Luksjax-pleadings@ls-law.com

TRV-17995J/538